1  ALEXANDER G. CALFO (SBN 152891)
      ACalfo@yukelaw.com
2  KELLEY S. OLAH (SBN 245180)
      KOlah@yukelaw.com
3  GABRIELLE ANDERSON-THOMPSON (SBN 247039)
      ganderson-thompson@yukelaw.com
4  YUKEVICH CALFO & CAVANAUGH
   355 S. Grand Avenue, 15th Floor
5  Los Angeles, CA  90071-1560
   Telephone:   (213) 362-7777
6  Facsimile:   (213) 362-7788

7  Attorneys for Defendants
   DEPUY ORTHOPAEDICS, INC.,
8  JOHNSON & JOHNSON SERVICES,
   INC., and JOHNSON & JOHNSON
9  (erroneously sued as "Johnson & Johnson,
   Inc.")

10

11              UNITED STATES DISTRICT COURT

12     CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13

14  CRAIG LIEBSCHER, *individually*      CASE NO. CV12-6832 JAK
                                                        (FMdx)
15              Plaintiff,
                                         NOTICE OF REMOVAL OF
16       vs.                             ACTION UNDER 28 U.S.C.
                                         SECTION 1441(b) (DIVERSITY)
17  DEPUY ORTHOPAEDICS, INC.;
    JOHNSON & JOHNSON SERVICES,          JURY TRIAL DEMANDED
18  INC.; JOHNSON & JOHNSON, INC.;
    THOMAS P. SCHMALZRIED, M.D.
19  A PROFESSIONAL CORPORATION;
    and DOES 1 through 10 inclusive,
20
                Defendants.
21

22

23                  **NOTICE OF REMOVAL**

24       Defendants DePuy Orthopaedics, Inc. ("DePuy"), Johnson & Johnson and

25  Johnson & Johnson Services, Inc. (collectively, "removing defendants"), through

26  undersigned counsel, hereby remove the state-court action entitled *Craig Liebscher*

27  *v. DePuy Orthopaedics, Inc., et al.*, Civil Action No. BC486261, filed in the

28  Superior Court of California, County of Los Angeles.  Removal is warranted under

799250.1 / 25-251

28 U.S.C. § 1441(b) because this is a diversity action over which the Court has original jurisdiction under 28 U.S.C. § 1332.   In support of removal, removing defendants state as follows:

1.     On or about June 11, 2012, plaintiff commenced this action against the removing defendants, Thomas P. Schmalzried, M.D., a Professional Corporation ("Dr. Schmalzried"), and un-named Doe defendants, by filing a complaint in the Superior Court of Los Angeles County, in the State of California, bearing case number BC486261.

2.     In this action, plaintiff alleges that he suffered various injuries as a result of being implanted with a Pinnacle Acetabular Cup System ("Pinnacle Cup System") manufactured and sold by DePuy.  (Compl. ¶¶ 52-59.)

3.     This is one of more than 1,800 similar cases pending around the country involving personal-injury allegations by plaintiffs who were implanted with a Pinnacle Cup System manufactured by DePuy.  On May 23, 2011, the Judicial Panel on Multidistrict Litigation issued an order establishing MDL No. 2244, *In re: DePuy Orthopaedics Inc., Pinnacle Hip Implant Products Liability Litigation*, before Judge Ed Kinkeade in the United States District Court for the Northern District of Texas.  Removing defendants intend to seek the transfer of this action to that proceeding, and will shortly provide the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL Rules.

4.     As set forth more fully below, this case is properly removed pursuant to 28 U.S.C. § 1441, because the Court has subject-matter jurisdiction over it, pursuant to 28 U.S.C. § 1332, and removing defendants have satisfied the procedural requirements for removal.

/ / /

/ / /

/ / /

/ / /

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

# I.   REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT-MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

5.   The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1332 and 1441 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different States.

## A.   Complete Diversity Of Citizenship

6.   Plaintiff is a citizen of the State of Arizona.  (Compl. ¶ 2.)

7.   DePuy is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the State of Indiana with its principal place of business in Warsaw, Indiana, and is therefore a citizen of the State of Indiana for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

8.   Johnson & Johnson and Johnson & Johnson Services, Inc. are, and were at the time plaintiff commenced this action, corporations organized under the laws of the State of New Jersey with their principal places of business in New Brunswick, New Jersey, and are therefore citizens of the State of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

9.   Dr. Schmalzried is a citizen of the State of California.  (Compl. ¶ 6.)

10.   Plaintiff also names numerous "Doe" defendants whose citizenship is disregarded for purposes of removal.  28 U.S.C. § 1441(a).

11.   Thus, there is complete diversity among the parties.

12.   Although removal is ordinarily improper where a "properly joined" defendant is a "citizen of the State in which such action is brought," *see* 28 U.S.C. § 1441(b), Dr. Schmalzried's citizenship should be ignored because he was fraudulently joined.

///

13.    Under the fraudulent-joinder doctrine, a court should disregard the citizenship of a defendant where, as here, there is "no possibility that the plaintiff will be able to establish a cause of action in state court against the alleged sham defendant." *Taylor v. Jeppesen DataPlan, Inc.*, No. C 10-1920 SBA, 2010 U.S. Dist. LEXIS 106160, at *5 (N.D. Cal. Sept. 27, 2010) (internal quotation marks and citation omitted); *see also McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

14.    That is precisely the case here.  Although plaintiff alleges claims against Dr. Schmalzried for strict liability, negligence, breach of express and implied warranties, negligent misrepresentation and fraud, there is no possibility that any of these claims would succeed under Arizona law.[1]

**(1)    There Is No Possibility That Liability Would Be Imposed On Dr. Schmalzried.**

15.    There is "no possibility that the plaintiff will be able to establish [his] cause[s] of action in state court against" Dr. Schmalzried. *Taylor*, 2010 U.S. Dist. LEXIS 106160, at *5.

/ / /

---

[1]    Under California's choice-of-law rules, plaintiff's claims are governed by the law of the state where plaintiff received his hip implant and allegedly suffered injury as a result.  *See Vestal v. Shiley Inc.*, No. SA CV 96-1205-GLT(EEx), 1997 U.S. Dist. LEXIS 23329, at *9 (C.D. Cal. Nov. 17, 1997) (applying North Carolina law to product-liability claims by North Carolina residents allegedly injured in that state because California has "little interest in applying its law to compensate nonresidents for alleged injuries sustained out-of-state"); *Paulo v. Bepex Corp.*, 792 F.2d 894, 896 (9th Cir. 1986) (California choice-of-law rules required the application of Ontario law because plaintiff product users were residents of Ontario and the injuries giving rise to the lawsuit were suffered there).  While plaintiff has not explicitly identified the state in which he was allegedly injured, it is presumably the state where plaintiff currently resides.  Accordingly, the validity of plaintiff's claims is properly considered under Arizona law.

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

16.  *First*, plaintiff cannot prevail on his strict-liability claims against Dr. Schmalzried because Dr. Schmalzried is not a manufacturer or seller of the Pinnacle Cup System.  Under Arizona law, strict liability only attaches to product manufacturers and sellers.  *See* Ariz. Rev. Stat. § 12-681(5) (limiting the application of strict liability to product manufacturers and sellers for damages resulting from products they sell); *Antone v. Greater Ariz. Auto Auction, Inc.*, 155 P.3d 1074, 1076 (Ariz. Ct. App. 2007) (explaining that Arizona law "limit[s] the application of strict liability to product manufacturers and sellers for damages resulting from defective and unreasonably dangerous products they sell"); *Winsor v. Glasswerks PHX, L.L.C.*, 63 P.3d 1040, 1049 (Ariz. Ct. App. 2003) (same).

17.  Here, plaintiff has not alleged that Dr. Schmalzried manufactured or sold the Pinnacle Cup System.  In fact, as set forth in the attached declaration, Dr. Schmalzried "played no role in the manufacturing, packaging, labeling, regulatory submissions, sales, inspection, distribution, and adverse event and complaint reporting, handling or tracking for the Pinnacle Cup System." *See* Decl. of Dr. Thomas P. Schmalzried ("Schmalzried Decl.") ¶ 2, *Sanchez v. DePuy Orthopaedics, Inc.*, No. CV 11-7867 (C.D. Cal.) (attached as Ex. 1).  Because plaintiff cannot show that Dr. Schmalzried was a manufacturer or seller, his strict-liability claims have no possibility of success under Arizona law.

18.  *Second*, plaintiff's claim for negligence against Dr. Schmalzried is utterly without merit because plaintiff cannot establish that Dr. Schmalzried owed any independent duty to him.  Under Arizona law, in order to be liable for negligence, a defendant must owe the plaintiff a duty of care. *Rodriguez v. City of Phoenix*, No. CV05-2092 PHX-DGC, 2007 U.S. Dist. LEXIS 8389, at *17-18 (D. Ariz. Feb. 5, 2007), *aff'd*, 2008 U.S. App. LEXIS 26730 (9th Cir. Nov. 14, 2008).  A party does not owe a duty of care to a person with whom it does not share a "special relationship." *Id.*  In the product-liability context, a defendant who did not manufacture or sell the product has no relationship with the plaintiff, and

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

1  therefore does not owe the plaintiff a duty of care.  *See In re Minnesota Breast*

2  *Implant Litig.*, 36 F. Supp. 2d 863, 873 (D. Minn. 1998).  This comports with the

3  general principle that no duty arises from "being the developer, inventor, or patent

4  holder of a product or design."  *Murphy v. Aventis Pasteur, Inc.*, 270 F. Supp. 2d

5  1368, 1376-77 (N.D. Ga. 2003).  *See also, e.g., Weseloh Family Ltd. P'ship v. K.L.*

6  *Wessel Construction Co., Inc.*, 125 Cal. App. 4th 152, 164 (2004) (design engineers

7  could not be held liable for general negligence because they owed no duty of care to

8  plaintiff property owners; courts have "invoked the concept of duty to limit [] the

9  otherwise potentially infinite liability which would follow from every negligent

10  act"); *Morrow v. Wyeth*, No. B-05-209, 2005 U.S. Dist. LEXIS 43194, at *13-14

11  (S.D. Tex. Oct. 13, 2005) (noting that the law places liability on the manufacturer of

12  an allegedly defective product, not on the specific individuals involved in the design

13  and manufacture of the product).

14      19.    As set forth above, plaintiff does not allege that Dr. Schmalzried

15  manufactured or sold the Pinnacle Cup System.  And Dr. Schmalzried's declaration

16  makes clear that he played no role in these processes.  As such, plaintiff is incapable

17  of proving that Dr. Schmalzried owed him a duty of care, and his negligence claim

18  accordingly fails.

19      20.    ***Third***, plaintiff's warranty-based claims against Dr. Schmalzried fail

20  for a host of reasons.

21      21.    For starters, plaintiff's causes of action for both breach of express

22  warranty and breach of implied warranty are barred as a matter of law because Dr.

23  Schmalzried is not a "seller" as defined by warranty law.  By statute, express and

24  implied warranties are only created by "sellers."  *See* Ariz. Rev. Stat. § 47-2314 ("a

25  warranty that the goods shall be merchantable is implied in a contract for their sale

26  if the seller is a merchant with respect to goods of that kind"); Ariz. Rev. Stat. § 47-

27  2313 (an express warranty exists where a "seller" makes an "affirmation of fact or

28  promise" to a "buyer").  A "seller" is defined as "a person who sells or contracts to

1    sell goods," *see* Ariz. Rev. Stat. § 47–2103(A)(4), and a "sale" is defined as "the

2    passing of title from the seller to the buyer for a price," Ariz. Rev. Stat. § 47-

3    2106(A).

4         22.    Here, plaintiff makes no allegation that Dr. Schmalzried sold him the

5    Pinnacle Cup System.  Because plaintiff has not (and cannot) prove that Dr.

6    Schmalzried was a "seller" – and thus the warrantor – of the product, his warranty-

7    based claims fail. *See In re Minnesota Breast Implant Litig.*, 36 F. Supp. 2d at 874

8    (express-warranty claim failed because defendant was "not the 'seller' as defined

9    under the Uniform Commercial Code" as adopted in Arizona).

10        23.    Furthermore, plaintiff's express-warranty claim also fails because he

11   does not identify any representations allegedly made to him by Dr. Schmalzried that

12   would constitute an express warranty. *See Mills*, 2011 WL 3566131, at *3 n.3

13   ("Plaintiff must actually identify what representations were made to her and how

14   they became the basis of the bargain.").  Rather, plaintiff makes only the conclusory

15   assertion that the Pinnacle Cup System was vaguely warranted as "safe, effective, fit

16   and proper for its intended use" and does not even attribute that supposed warranty

17   to Dr. Schmalzried.  (*See* Compl. ¶ 87.)  Because "[c]onclusory assertions . . . do not

18   suffice" to establish a claim for breach of express warranty under Arizona law,

19   plaintiff's express-warranty claim fails for this reason too.  *Id.*

20        24.    In addition, plaintiff cannot prevail on his implied-warranty claim

21   against Dr. Schmalzried because it is contingent on the success of his strict-liability

22   claims, which is doomed to fail. *See supra* ¶¶ 16-17.  Under Arizona law, "the

23   theory of liability under implied warranty has been merged into the doctrine of strict

24   liability in tort," and the failure of the latter necessarily results in the failure of the

25   former. *Scheller v. Wilson Certified Foods, Inc.*, 559 P.2d 1074, 1076 (Ariz. Ct.

26   App. 1977); *see also Mills v. Bristol-Myers Squibb Co.*, No. CV-11-968-PHX-FJM,

27   2011 WL 3566131, at *3 (D. Ariz. Aug. 12, 2011)  ("Having found that plaintiff

28   fails to plead a plausible strict liability claim, we also dismiss her breach of implied

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

1   warranty claim."). As set forth above, plaintiff's strict-liability claims fail because

2   plaintiff cannot prove that Dr. Schmalzried manufactured or sold the Pinnacle Cup

3   System. Because his strict-liability claims have no chance of success, his implied-

4   warranty claim must also fall.

5       25.   **Fourth**, plaintiff's claims against Dr. Schmalzried for negligent

6   misrepresentation and fraud (collectively, plaintiff's "fraud-based claims") are

7   meritless because: (1) plaintiff does not identify a single statement made by Dr.

8   Schmalzried that was allegedly deceptive; (2) plaintiff fails to establish any

9   connection between any actions by Dr. Schmalzried and his implantation with the

10  Pinnacle Cup System that could possibly satisfy the reliance/causation elements of

11  his fraud-based claims; and (3) plaintiff fails to allege a duty to disclose.

12      26.   Causes of action for negligent misrepresentation require a plaintiff to

13  prove, *inter alia*, that the defendant engaged in a misrepresentation and that the

14  plaintiff relied on it. *See, e.g., Haisch v. Allstate Ins. Co.*, 5 P.3d 940, 944 (Ariz.

15  2000) (explaining that the tort of negligent misrepresentation, as defined by Arizona

16  law, occurs where one "supplies false information for the guidance of others" who

17  "justifiabl[y] rel[ied] upon the information") (citing *St. Joseph's Hosp. & Med. Ctr.

18  v. Reserve Life Ins. Co.*, 742 P.2d 808, 813 (Ariz. 1987); *McAlister v. Citibank

19  (Arizona)*, 829 P.2d 1253, 1261 (Ariz. Ct. App. 1992)).

20      27.   Mere assertions of reliance are insufficient to support such fraud-based

21  claims; rather, plaintiff must allege the specifics of his reliance on the alleged

22  representation. *See Mills v. Bristol-Myers Squibb Co.*, No. CV-11-968-PHX-FJM,

23  2011 WL 3566131, at *2 (D. Ariz. Aug. 12, 2011) ("Plaintiff's reliance on generic,

24  boilerplate allegations does not suffice" to state a claim for fraud and

25  misrepresentation). This is particularly true because the elements of plaintiff's

26  fraud-based claims must be alleged with the specificity required under Federal Rule

27  of Civil Procedure 9(b). *See, e.g., Fisher v. Paul Revere Ins. Group*, 55 F. App'x

28  412, 414 (9th Cir. 2002) (affirming trial court's refusal to remand case to state court

1    where the plaintiff "did not specifically allege facts that would support any of the

2    elements of deceit" with regard to the non-diverse defendant, as required under Rule

3    9(b)); *BBG Props. v. Eaton*, 342 F. App'x 919, 920 (5th Cir. 2009) (affirming trial

4    court's refusal to remand case to state court where the plaintiff "had not stated its

5    fraud claim with sufficient particularity" as required by Rule 9(b)).

6        28.    Here, plaintiff has not identified any statements that Dr. Schmalzried

7    allegedly made to him (or his physician) regarding the safety or efficacy of the

8    Pinnacle Cup System.  Nor has plaintiff alleged that he (or his physician) relied on

9    any such statements (or any other conduct by Dr. Schmalzried) in selecting the

10   Pinnacle Cup System – let alone with the particularity required by Rule 9(b).

11   Accordingly, there is no reasonable basis to conclude that plaintiffs would prevail

12   on their fraud-based claims. *See Fisher*, 55 F. App'x at 414 (affirming trial court's

13   refusal to remand case to state court where the plaintiff "did not specifically allege

14   facts that would support any of the elements of deceit" with regard to the non-

15   diverse defendant, as required under Rule 9(b)); *Aronis v. Merck & Co.*, No. CIV. S-

16   05-0486 WBS DAD, 2005 WL 5518485, at *1 (E.D. Cal. May 3, 2005) (finding

17   fraudulent joinder of a distributor where "plaintiff d[id] not allege that [the

18   distributor] contributed in any way to her injuries"; "[t]o state a claim against a

19   defendant, a plaintiff must allege a causal connection between the injury and the

20   conduct of that defendant"); *see also BBG Props.*, 342 F. App'x at 920 (affirming

21   trial court's refusal to remand case to state court where the plaintiff "had not stated

22   its fraud claim with sufficient particularity" with regard to the non-diverse defendant

23   as required under Rule 9(b)); *Druker v. Fortis Health*, No. 5:06-cv-00052, 2007

24   U.S. Dist. LEXIS 402, at *11-13 (S.D. Tex. Jan. 4, 2007) (finding fraudulent joinder

25   where the plaintiff "failed to lodge any meaningful factual allegations" and did not

26   allege specific material misrepresentations upon which he relied as required by Rule

27   9(b)).

28   / / /

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

29.  Likewise, plaintiff's fraud claim fails for the additional reason that plaintiff has not pled facts supporting a duty to disclose under Arizona law. *See, e.g., Haisch*, 5 P.3d at 944 ("Where the defendant has a legal or equitable obligation to reveal material information, his failure to do so is equivalent to a misrepresentation and may therefore support a claim of actionable fraud where the remaining elements of that tort are proved."); *Gould v. M&I Marshall & Isley Bank*, No. CV11-1299-PHX-DGC, 2012 U.S. Dist. LEXIS 32245, at *7 (D. Ariz. Mar. 12, 2012) ("A failure to disclose can constitute fraud only if the defendant had a duty to disclose."); *Cohen v. Joint Health Ventures*, 107 F. App'x 714, 717 (9th Cir. 2004) (applying Arizona law) ("[Defendant] did not have a duty to speak, so it did not commit fraud by omission."). A duty to disclose generally arises where there is a confidential or fiduciary relationship between the parties. *See, e.g., Hanks v. Andrews*, No. CV 05-2275-PHX-NVW, 2006 U.S. Dist. LEXIS 4182, at *5-6 (D. Ariz. Jan. 30, 2006) (a duty to make a full and truthful disclosure – sufficient to subject a defendant to liability for misrepresentation or concealment – exists "where a relation of trust and confidence exists between the two parties") (internal quotation marks omitted); *Gould*, 2012 U.S. Dist. LEXIS 32245, at *11 (the plaintiffs "various fraud-based nondisclosure claims all fail[ed] because Defendant did not have a duty to make disclosures to plaintiffs regarding the appraisal" where Arizona law was clear that "a mortgage lender [did] not owe a fiduciary duty to a borrower"). Here, plaintiff does not allege that he had a fiduciary or confidential relationship with Dr. Schmalzried. Indeed, he does not allege any relationship or contact at all. As such, there is no possibility that plaintiff can succeed on his claims alleging concealment, suppression, and omission against Dr. Schmalzried.

30.  For all of these reasons, there is no possibility plaintiff would prevail on his fraud-based claims against Dr. Schmalzried; accordingly, Dr. Schmalzried is fraudulently joined.

/ / /

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

31. ***Finally***, even if Arizona law did not prohibit plaintiff from prevailing on his causes of action against Dr. Schmalzried, federal law would. Specifically, all of plaintiff's claims against Dr. Schmalzried would still fail because such claims – all of which rest on either a failure-to-warn theory or a defective-design theory – are preempted when they are brought against ***non-manufacturers*** of an FDA-approved product. *See PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567, 2581 (2011).[2] *See also* Schmalzried Decl. ¶ 2 (attesting that Dr. Schmalzried "played no role in the manufacturing, packaging, labeling, regulatory submissions, sales, inspection, distribution, and adverse event and complaint reporting, handling or tracking for the Pinnacle Cup System").

32. In *Mensing*, the U.S. Supreme Court ruled that all claims against generic drug manufacturers that were premised on a failure to warn are preempted by federal law based on the principle of impossibility preemption. *Id.* at 2581. According to the Supreme Court, generic manufacturers cannot be found liable on a failure-to-warn theory because generic manufacturers have no power to unilaterally effectuate a label change; rather, they must use the same label and warnings as those approved by the FDA with respect to the brand-name version of the drug. *Id.* at 2575-76. Thus, as long as the labels and warnings for the generic form of the drug

---

[2]   Although not alleged as separate counts of the Complaint, plaintiff may also purport to pursue theories of defective manufacture and failure to test against all the defendants (*see* Compl. ¶¶ 64; 71), but he cannot prevail against Dr. Schmalzried on either. Because it is undisputed that Dr. Schmalzried had absolutely no role in the manufacture of the Pinnacle Cup System, he obviously cannot be held liable on a defective-manufacture theory. In addition, plaintiff's failure-to-test theory is nothing more than a failure-to-warn theory in disguise and is thus barred by *Mensing* too. *See Gross v. Pfizer, Inc.*, 825 F. Supp. 2d 654, 659 (D. Md. 2011) ("Plaintiff contends that her allegation that PLIVA failed to test and inspect its products survives *Mensing*. The Court fails to see how these allegations are but a piece of Plaintiff's larger failure to warn claims. Accordingly, *Mensing* preempts these allegations as they relate to Plaintiff's failure to warn claims.").

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

1    match the labels and warnings that the FDA has approved for the brand-name form

2    of the drug, generic manufacturers cannot as a matter of law be held liable under

3    state tort law for failing to warn.

4        33.    Since *Mensing*, courts have applied its logic to causes of action that rest

5    on an FDA-regulated product's design as well.  As one court explained, "the

6    'federal duty of sameness,' also applies in the context of generic drug design." *See,*

7    *e.g., In re Pamidronate Prods. Liab. Litig.*, Nos. 09-MD-2120, 10-CV-

8    1860(KAM)(SMG), 2012 WL 272889, at *3-4 (E.D.N.Y. Jan. 30, 2012) (internal

9    quotation marks and citations omitted) (finding that plaintiffs' claims for breach of

10   implied warranty and design defect were preempted under *Mensing*).  Thus, causes

11   of action based on a defective design are likewise preempted under *Mensing. See id.*

12       34.    As other courts have found, these principles apply in spades to non-

13   manufacturing defendants such as Dr. Schmalzried.  After all, these defendants have

14   "no authority" to effectuate changes to the product or its labeling either. *See, e.g., In*

15   *re Fosamax Prods. Liab. Litig.*, MDL No. 2243 (JAP-LHG), No. 3:08-cv-00008-

16   JAP-LHG, 2012 U.S. Dist. LEXIS 5817, at *26-28 (D.N.J. Jan. 17, 2012) (because a

17   distributor "ha[d] no authority to initiate a labeling change" and "no power to

18   unilaterally change Fosamax labeling," it "could not independently do under federal

19   law what state law requires of it"); *see also Stevens v. Cmty. Health Care, Inc.*, No.

20   ESCV200702080, 2011 WL 6379298, at *1 (Mass. Super. Oct. 5, 2011) ("As a

21   distributor, however, [the defendant] had no ability to change labeling or warnings

22   and thus, like a generic manufacturer, [it] cannot be subject to liability in connection

23   with a state law claim premised on a 'failure to warn.'").

24       35.    As noted above, all of plaintiff's claims against Dr. Schmalzried rest on

25   either a failure-to-warn theory or a defective-design theory.  Because Dr.

26   Schmalzried had "no power to unilaterally change" either the design of the FDA-

27   regulated Pinnacle Cup System – or the warnings that accompanied it – all of

28   plaintiff's claims against him are preempted. *See, e.g., Gross*, 825 F. Supp. 2d at

659 (*Mensing* preempted all of plaintiff's claims, including those based on plaintiff's allegations that the defendant was "negligent for continuing to sell metoclopramide with an inadequate label, for continuing to sell a product that was not fit for the purpose for which it was sold, and for continuing to place an unreasonably dangerous product into the stream of commerce"); *Morris v. Wyeth, Inc.*, No. 3:09-CV-854, 2011 WL 4973839, at *1 (W.D. La. Oct. 19, 2011) (dismissing plaintiff's claims for defective construction or composition, defective design, breach of express warranty, and inadequate warning under *Mensing*).

36.     For all of these reasons, there is no possibility plaintiff would prevail on any of his claims against Dr. Schmalzried, and Dr. Schmalzried is therefore fraudulently joined.

> (2)     **Plaintiff Does Not Segregate His Legal Allegations Against Dr. Schmalzried – Or Support Them With Any Specific Facts – Further Demonstrating That He Was Fraudulently Joined**.

37.     Even if liability were theoretically possible, plaintiff's allegations against Dr. Schmalzried contain no factual color, further evidencing that he is fraudulently joined.  Indeed, plaintiff's entire 111-paragraph complaint contains only a ***single paragraph*** pertaining specifically to Dr. Schmalzried.  (*See* Compl. ¶ 6.)

38.     Moreover, all of plaintiff's legal allegations are targeted at "defendants" generally – rather than at any defendant in particular.  For example, in support of his causes of action for strict liability and negligence, plaintiff makes only broad, conclusory claims against a group generically described as "defendants," lumping Dr. Schmalzried together with DePuy even where the allegations could not possibly apply to him.  (*See, e.g.*, Compl. ¶ 61 ("Defendants are manufacturers, distributors, sellers, and suppliers of the Pinnacle Device."); *id.* ¶ 64 ("Defendants failed to perform adequate testing . . . ."); *id.* ¶ 65 ("Defendants are

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

1    subject to strict liability for their failure to warn Plaintiff, and his physicians of the

2    dangers associated with the implantation of the Pinnacle Device"); *id.* ¶ 69 ("the

3    Pinnacle Device was in this defective condition at the time it left the hands of the

4    Defendants"); *id.* ¶ 76 ("Defendants had a duty to exercise reasonable care in the

5    designing, researching, manufacturing, marketing, supplying, promoting, sale,

6    testing, quality assurance, quality control and/or distribution of the Pinnacle Device

7    into the stream of commerce").)

8         39.    Likewise, with regard to his warranty and fraud-based claims, plaintiff

9    makes only broad and generic allegations about unspecified representations

10   allegedly made by all "defendants." (*See, e.g., id.* ¶ 84 ("Defendants . . .

11   misrepresent[ed] and/or fail[ed] to adequately warn Plaintiff's physicians, the

12   medical community, Plaintiff, and the public about the risks of the Pinnacle

13   Device."); *id.* ¶ 90 ("Defendants breached their warranty of the mechanical

14   soundness of the Pinnacle Device"); *id.* ¶ 92 ("Defendants impliedly warranted to

15   prospective purchasers and users, including Plaintiff, that the Pinnacle Device was

16   safe, merchantable, and fit for the ordinary purposes for which said product was to

17   be used."); *id.* ¶ 97 ("Defendants made representations to Plaintiff and his

18   physicians that their Pinnacle Device is a high-quality, safe and effective hip

19   replacement system.").)

20        40.    As numerous courts have found, the fact that all of plaintiff's

21   allegations are targeted at "defendants" generally – rather than Dr. Schmalzried in

22   particular – further demonstrates that he was fraudulently joined. *See, e.g., Beavers*

23   *v. DePuy Orthopaedics, Inc.*, No. 1:11 dp 20275, 2012 WL 1945603 (N.D. Ohio

24   May 30, 2012) (finding distributor fraudulently joined in ASR-hip case where

25   plaintiffs' 89-paragraph complaint only mentioned the distributor twice, with the

26   remainder of the paragraphs "fail[ing] to distinguish between the DePuy

27   Defendants' allegedly wrongful acts and those of [the distributor]"); *Shah v. Wyeth*

28   *Pharms., Inc.*, No. CV 04-8652 DT (MANx), 2005 WL 6731641, at *3 (C.D. Cal.

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

Jan. 18, 2005) ("allegations against 'defendants' collectively are insufficient to warrant remand, especially when Plaintiffs fail to allege any 'particular or specific activity'" on the part of each of the non-diverse defendants) (citing *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 391-92 (5th Cir. 2000)); *Gomes v. Michaels Stores, Inc.*, No. S-06-1921 LKK/KJM, 2006 U.S. Dist. LEXIS 81354, at *5-7 (E.D. Cal. Oct. 27, 2006) (dismissing non-diverse defendant and refusing to remand case where plaintiff generally "state[d] that all defendants' acts 'were performed partly within and partly outside the course and scope of their authority and employment'" but did not include any specific allegations about the non-diverse defendant) (citing complaint); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, MDL No. 1407, No. C02-423R, 2002 WL 34418423, at *2, *3 (W.D. Wash. Nov. 27, 2002) (denying remand in case involving local pharmacy; allegations directed toward "defendants" or "all defendants" could not reasonably be interpreted to include the store); *Bennett v. Allstate Ins. Co.*, 753 F. Supp. 299, 301 (N.D. Cal. 1990) (denying motion to remand because, *inter alia*, plaintiff's complaint made "no attempt" to "differentiate between the conduct" of the defendants); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 424 (E.D. Pa. 2002) (finding fraudulent joinder of non-manufacturer defendants where complaints were "filled . . . with general statements levied against all defendants, which most properly can be read as stating claims against the drug manufacturers").

41.      For this reason too, Dr. Schmalzried is fraudulently joined, and his citizenship must be disregarded for jurisdictional purposes.

**B.      <u>Amount In Controversy</u>**

42.      Plaintiff in this action claims that he has suffered "past, present, and future pain and suffering, severe and possibly permanent injuries, emotional distress, disability, disfigurement, economic damages (including medical and

1  hospital expenses), monitoring, rehabilitative and pharmaceutical costs, lost wages,

2  and loss of future earnings capacity." (Compl. ¶ 56.)  Plaintiff seeks both general

3  damages and punitive damages. (*See id.*, Prayer For Relief.)

4        43.  It is widely recognized that personal-injury claims facially meet the

5  $75,000 jurisdictional threshold.  *See, e.g., In re Rezulin Prods. Liab. Litig.*, 133 F.

6  Supp. 2d 272, 296 (S.D.N.Y. 2001) (finding that a complaint alleging various

7  injuries from taking a prescription drug "obviously asserts a claim exceeding

8  $75,000").  In addition, compensatory and punitive damages in excess of the

9  jurisdictional amount of $75,000 have been awarded in product-liability cases in

10  California.  *See, e.g., Stewart v. Union Carbide Corp.*, 190 Cal. App. 4th 23 (2010);

11  *Karlsson v. Ford Motor Co.*, 140 Cal. App. 4th 1202 (2006); *Jones v. John Crane,*

12  *Inc.*, 132 Cal. App. 4th 990 (2005).

13        44.  Other federal courts have similarly concluded that the amount in

14  controversy exceeded $75,000 in pharmaceutical cases.  *See, e.g., Smith v. Wyeth,*

15  *Inc.*, 488 F. Supp. 2d 625, 630-31 (W.D. Ky. 2007) (denying motion to remand);

16  *Copley v. Wyeth, Inc.*, No. 09-722, 2009 WL 1089663 (E.D. Pa. Apr. 22, 2009)

17  (same).

18        45.  Given plaintiff's allegations of physical injury, emotional distress, and

19  loss of earning capacity, it is evident that the amount of compensatory and punitive

20  recovery sought by plaintiff exceeds $75,000.

21        46.  Thus, on the face of the Complaint, the finder of fact could easily

22  conclude that plaintiff is entitled to damages in excess of $75,000.

23  **II.  REMOVING DEFENDANTS HAVE SATISFIED THE PROCEDURAL**

24  **REQUIREMENTS FOR REMOVAL.**

25        47.  Defendant DePuy was served with plaintiff's complaint on July 9,

26  2012.  Defendants Johnson & Johnson and Johnson & Johnson Services, Inc. have

27  not been served.  Accordingly, this Notice of Removal is timely filed pursuant to 28

28  U.S.C. § 1446(b).

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

48.     The Superior Court of Los Angeles County is located within the Central District of California.  *See* 28 U.S.C. § 1441(a).

49.     Removing defendants are not citizens of the State of California, the State where this action was brought.  *See* 28 U.S.C. § 1441(b).

50.     It is well settled that co-defendants who are fraudulently joined need not join in the removal.  *See Borsuk v. Mass. Mut. Life Ins. Co.*, No C 03-630 VRW, 2003 U.S. Dist. LEXIS 25259, at *7-8 (N.D. Cal. Sept. 4, 2003).  As set forth above, Dr. Schmalzried is fraudulently joined.  *See* Section I.A, above.  Therefore, he need not consent to removal.

51.     No previous application has been made for the relief requested herein.

52.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served upon removing defendants, which papers include the complaint, are attached collectively as Exhibit 2.  Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for plaintiff and a copy is being filed with the Clerk of the Superior Court of the County of Los Angeles.

WHEREFORE, removing defendants respectfully remove this action from the Superior Court of the County of Los Angeles, in the State of California, bearing Number BC486261, to this Court.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

799250.1 / 25-251

17

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)

1    Respectfully submitted,

2    DATED: August 8, 2012          YUKEVICH CALFO & CAVANAUGH

3

4

5    By: _____

6    Alexander G. Calfo
     Kelley S. Olah
7    Gabrielle Anderson-Thompson
     Attorneys for Defendants DEPUY
8    ORTHOPAEDICS, INC., JOHNSON &
     JOHNSON SERVICES, INC., and
9    JOHNSON & JOHNSON (erroneously
     sued as "Johnson & Johnson, Inc.")
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

799250.1 / 25-251

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)

**EXHIBIT 1**

1 | Ralph A. Campillo (Bar No. 70376)
2 | Wendy A. Tucker  (Bar No. 121122)
~~Michael M. Walsh (Bar No. 150865)~~
3 | SEDGWICK LLP
4 | 801 South Figueroa Street, 19th Floor
Los Angeles, CA 90017-5556
5 | Telephone: 213.426.6900
6 | Facsimile: 213.426.6921
Email : ralph.campillo@sedgwicklaw.com
7 |         wendy.tucker@sedgwicklaw.com
8 |         michael.walsh@sedgwicklaw.com
Attorneys for Defendant
9 | THOMAS P. SCHMALZRIED, M.D.

10

11 | **UNITED STATES DISTRICT COURT**
12 | **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| 13 ARMAND SANCHEZ, et al., | CASE NO. CV 11-7867 |
| 14     Plaintiffs, | **DECLARATION OF DR. THOMAS P. SCHMALZRIED** |
| 15 | |
| 16 vs. | Judge:  Hon. Jacqueline H. Nguyen |
| 17 DEPUY ORTHOPAEDICS, INC., et al., | |
| 18 | |
| 19     Defendants. | |
| 20 CATHERINE SHELTON, | CASE NO. 2:11-cv-08082 |
| 21 | |
| 22     Plaintiff, | **DECLARATION OF DR. THOMAS P. SCHMALZRIED** |
| 23 vs. | |
| 24 DEPUY ORTHOPAEDICS, INC., et al., | Judge:  Hon. Dean D. Pregerson |
| 25 | |
| 26     Defendants. | |

27

28

Decl. of Dr. Thomas P. Schmalzried

1

*EXHIBIT 1 - PAGE 19*

1    I, THOMAS P. SCHMALZRIED, pursuant to 28 U.S.C. § 1746, hereby

2    ~~declare under penalty of perjury that the following statements are true and correct, to~~

3

4    the best of my knowledge and belief:

5    1.    I am a practicing orthopedic surgeon and the Medical Director of the Joint

6

7    Replacement Institute in Los Angeles, California.  I am also the principal for Thomas

8    P. Schmalzried, M.D., A Professional Corporation, a California corporation.

9    2.    I played no role in the manufacturing, packaging, labeling, regulatory

10

11   submissions, sales, inspection, distribution, and adverse event and complaint

12   reporting, handling or tracking for the Pinnacle Cup System.  I had no control or

13   influence over DePuy's manufacturing, packaging, labeling, regulatory, sales,

14

15   inspection, distribution and adverse event and complaint reporting, handling or

16   tracking decisions regarding the Pinnacle Cup System.

17   3.    I was one of eight surgeons selected by DePuy who provided assistance to

18

19   DePuy with the design of the Pinnacle Cup System.  DePuy determined the final

20   design specifications for the Pinnacle Cup System and the product labeling content.

21   4.    The DePuy brochure, "Advancing High Stability and Low Wear" was created

22

23   by DePuy.  My only contribution to this brochure was a general educational

24   summary (including references to thirty four scientific and medical articles as

25   support for the data in this summary), written at the request of DePuy, entitled "High

26

27   Stability, Low Wear Metal-on-Metal Bearings: Benefits, Risks, and Alternatives."

28

Decl. of Dr. Thomas P. Schmalzried

2

*EXHIBIT 1 - PAGE 20*

1    As the title reflects, this paper discusses the benefits, risks and alternatives to metal-

2
3    on-metal bearings.  The paper clearly outlines the special risks associated with all

4    metal-metal bearings, and states my belief that "there is insufficient clinical data to

5    demonstrate the overall superiority of any single bearing couple for all total hip

6
7    patients" and "it is therefore reasonable to individualize the choice of bearing."  The

8    only Pinnacle-specific data in this educational paper was provided by DePuy and

9    clearly labeled as "DePuy Internal Data."

10
11   5.      I was not a part of DePuy's internal complaint handling system for the

12   Pinnacle Cup System and thus was not notified if DePuy received such complaints.

13   6.      I have never made any representations or statements to any physicians, or to

14
15   any member of the public, including plaintiff, regarding whether a specific DePuy

16   orthopedic implant product was suitable for any specific patient.  That is a decision

17   made by the patient's physician and not by me.

18
19   I declare under penalty of perjury that the foregoing is true and correct.

20                                            Executed on ___10 / 27___, 2011.

21
22                                            _____
23                                            THOMAS P. SCHMALZRIED, M.D.

24

25

26

27

28                          Decl. of Dr. Thomas P. Schmalzried

                                        3

                                                    *EXHIBIT 1 - PAGE 21*

# EXHIBIT 2

07/09/12 C 330

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:** DEPUY ORTHOPAEDICS, INC.; JOHNSON
*(AVISO AL DEMANDADO):* & JOHNSON SERVICES, INC.; JOHNSON
& JOHNSON, INC.; THOMAS P. SCHMALZRIED, M.D. A
PROFESSIONAL CORPORATION; and DOES 1 through 10
inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** CRAIG LIEBSCHER,
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* individually

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JUN 12 2012

John A. Clarke, Executive Officer/Clerk
BY *Cristina Grijalva* Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

SUPERIOR COURT OF CALIFORNIA
CENTRAL DISTRICT - CLERK OF COURT
111 NORTH HILL STREET
LOS ANGELES, CA 90012

CASE NUMBER:
*(Número del Caso):* BC 486261

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

PETE KAUFMAN, SBN 269297            (310)477-1700
PANISH SHEA & BOYLE
11111 SANTA MONICA BLVD. SUITE 700
LOS ANGELES, CA 90025

DATE: May 4, 2012            John A. Clarke            Clerk, by            CRISTINA GRIJALVA            , Deputy
*(Fecha)*            *(Secretario)*            *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

JUN 12 2012

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* Depuy Orthopaedics, Inc
    under: ☑ CCP 416.10 (corporation)            ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☑ by personal delivery on *(date):* 07/09/12            Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal
Solutions
& Plus

Code of Civil Procedure §§ 412.20, 465

*EXHIBIT 2 - PAGE 22*

07/09/12Q 320

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JUN 1 2 2012

John A. Clarke, Executive Officer/Clerk
BY Cristina Grijalva, Deputy

**NOTICE TO DEFENDANT:** DEPUY ORTHOPAEDICS, INC.; JOHNSON
*(AVISO AL DEMANDADO):* & JOHNSON SERVICES, INC.; JOHNSON
& JOHNSON, INC.; THOMAS P. SCHMALZRIED, M.D. A
PROFESSIONAL CORPORATION; and DOES 1 through 10
inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** CRAIG LIEBSCHER,
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* individually

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF CALIFORNIA
CENTRAL DISTRICT - CLERK OF COURT
111 NORTH HILL STREET
LOS ANGELES, CA 90012

**CASE NUMBER:**
*(Número del Caso):* BC 486261

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
PETE KAUFMAN, SBN 269297    (310) 477-1700
PANISH SHEA & BOYLE
11111 SANTA MONICA BLVD., SUITE 700
LOS ANGELES, CA 90025

DATE: May 4, 2012    John A. Clarke    Clerk, by    CRISTINA GRIJALVA    , Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

For proof of service of this summons, use Proof of Service of Summons (form POS-010).
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Johnson & Johnson Services, Inc
   under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 07/09/12

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465

Legal Solutions Plus

*EXHIBIT 2 - PAGE 23*



COPY

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | CONFORMED COPY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Peter Kaufman, Esq.
PETER L. KAUFMAN, SBN 269297
PANISH SHEA & BOYLE
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
  TELEPHONE NO: 310.477.1700    FAX NO: 310.477.1699
ATTORNEY FOR *(Name):*  Plantiff Craig Liebscher

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 11 2012

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
A.E. LaFLEUR-CLAYTON

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
  STREET ADDRESS: 111 NORTH HILL STREET
  MAILING ADDRESS:
  CITY AND ZIP CODE: LOS ANGELES, CA 90012
  BRANCH NAME: CENTRAL DISTICT

CASE NAME:  Craig Liebscher v. DEPUY, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $26,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: | BC486261 |
| | | | DEPT: | |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[X] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
  a. [ ] Large number of separately represented parties
  b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
  c. [ ] Substantial amount of documentary evidence
  d. [ ] Large number of witnesses
  e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
  f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify):*  FOUR
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 8, 2012
Peter Kaufman, Esq.
_____
*(TYPE OR PRINT NAME)*                                      *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Legal Solutions Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

*EXHIBIT 2 - PAGE 24*

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
　Asbestos Property Damage
　Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
　Medical Malpractice—Physicians & Surgeons
　Other Professional Health Care Malpractice
Other PI/PD/WD (23)
　Premises Liability (e.g., slip and fall)
　Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
　Intentional Infliction of Emotional Distress
　Negligent Infliction of Emotional Distress
　Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
　Legal Malpractice
　Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
　Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
　Contract/Warranty Breach—Seller Plaintiff *(not fraud or negligence)*
　Negligent Breach of Contract/ Warranty
　Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
　Collection Case—Seller Plaintiff
　Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
　Auto Subrogation
　Other Coverage
Other Contract (37)
　Contractual Fraud
　Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
　Writ of Possession of Real Property
　Mortgage Foreclosure
　Quiet Title
　Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
　Writ–Administrative Mandamus
　Writ–Mandamus on Limited Court Case Matter
　Writ–Other Limited Court Case Review
Other Judicial Review (39)
　Review of Health Officer Order
　Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
　Abstract of Judgment (Out of County)
　Confession of Judgment *(non-domestic relations)*
　Sister State Judgment
　Administrative Agency Award *(not unpaid taxes)*
　Petition/Certification of Entry of Judgment on Unpaid Taxes
　Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
　Declaratory Relief Only
　Injunctive Relief Only *(non-harassment)*
　Mechanics Lien
　Other Commercial Complaint Case *(non-tort/non-complex)*
　Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
　Civil Harassment
　Workplace Violence
　Elder/Dependent Adult Abuse
　Election Contest
　Petition for Name Change
　Petition for Relief from Late Claim
　Other Civil Petition

*EXHIBIT 2 – PAGE 25*

| SHORT TITLE: Craig Liebscher v. Depuy Orthopaedics, Inc. | CASE NUMBER: BC486261 |
|---|---|

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 11 2012

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
A. EI LaFLEUR-CLAYTON

CIVIL CASE COVER SHEET ADDENDUM AND
STATEMENT OF LOCATION
(CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO
COURTHOUSE LOCATION)

| This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court. |
|---|

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [X] YES   CLASS ACTION? [ ] YES   LIMITED CASE? [ ] YES   TIME ESTIMATED FOR TRIAL 30 [ ] HOURS/ [X] DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class Actions must be filed in the Stanley Mosk Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons –<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | [ ] A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | [ ] A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | [ ] A6070  Asbestos Property Damage | 2. |
| | | [ ] A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | [X] A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | [ ] A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | [ ] A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | [ ] A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | [ ] A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | [ ] A7270  Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | [ ] A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |

LACIV 109 (Rev. 01/11)
LASC Draft 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 1 of 4
LA-CV109

*EXHIBIT 2 - PAGE 26*

| SHORT TITLE: Craig Liebscher v. Depuy Orthopaedics, Inc. | | CASE NUMBER | | |
|---|---|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|---|
| **Non-Personal Injury / Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation      Number of parcels _____ | | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | | 2., 6. |
| | | ☐ A6032  Quiet Title | | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | | 2., 6. |
| | Unlawful Detainer-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Foreclosure | | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | | 2., 6. |

LACIV 109 (Rev. 01/11)
LASC Draft 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 2 of 4

*EXHIBIT 2 - PAGE 27*

| SHORT TITLE: Craig Liebscher v. Depuy Orthopaedics, Inc. | | CASE NUMBER | |
|---|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

*EXHIBIT 2 - PAGE 28*

| SHORT TITLE: Craig Liebscher v. Depuy Orthopaedics, Inc. | CASE NUMBER |
|---|---|

Item III. *Statement of Location:* Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE | ADDRESS: 2200 W. Third St., Suite 400 |
|---|---|
| ☐1. ☐2. ☐3. ☐4. ☒5. ☐6. ☐7. ☐8. ☐9. ☐10. | |

| CITY: | STATE: | ZIP CODE: | |
|---|---|---|---|
| Los Angeles | Ca. | 90057 | |

Item IV. *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk courthouse in the Central District of the Los Angeles Superior Court [Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)].

Dated: 06/08/2012

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)
PETER L. KAUFMAN, ESQ.

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LASC Approved CIV 109 (Rev. 01/07).

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

---

LACIV 109 (Rev. 01/11)
LASC Draft 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 4 of 4

*EXHIBIT 2 - PAGE 29*

1
BRIAN PANISH, California State Bar No. 116060
 *panish@psblaw.com*
2
PETER KAUFMAN, California State Bar No. 269297
 *kaufman@psblaw.com*
3
PETER POLOS, California State Bar No. 149856
 *polos@psblaw.com*
4
PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
5
Los Angeles, California 90025
Telephone: 310.477.1700
6
Facsimile: 310.477.1699

7
Tobias Millrood (State Bar No. 77764)
tmillrood@pbmattorneys.com
8
Bharati O. Sharma (State Bar No. 88440)
bsharma@pbmattorneys.com
9
POGUST BRASLOW & MILLROOD, LLC
Eight Tower Bridge, Suite 1520
10
161 Washington Street
Conshohocken, PA 19428

11

12
Telephone:    (610) 941-4204
Facsimile:    (610) 941-4245
13
Attorneys for Plaintiffs

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 11 2012

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
A. El LaFLEUR-CLAYTON

14
15   **SUPERIOR COURT OF CALIFORNIA**
16          **COUNTY OF LOS ANGELES**
17
18   CRAIG LIEBSCHER, individually
19          Plaintiff,
20            v.
21   DEPUY ORTHOPAEDICS, INC.; JOHNSON
     & JOHNSON SERVICES, INC.; JOHNSON &
22   JOHNSON,     INC.;    THOMAS     P.
     SCHMALZRIED, M.D. A PROFESSIONAL
23   CORPORATION; and DOES 1 through 10
     inclusive,
24          Defendants.
25
26
27

**B C 4 8 6 2 6 1**

Case No.

**COMPLAINT FOR:**

(1) **STRICT PRODUCT LIABILITY,**
(2) **NEGLIGENCE,**
(3) **BREACH OF IMPLIED WARRANTIES,**
and
(4) **BREACH OF EXPRESS WARRANTY**

**JURY TRIAL DEMANDED**

28          Plaintiff CRAIG LIEBSCHER("Plaintiff"), alleges on information and belief against

---
COMPLAINT

*PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax*

*EXHIBIT 2 - PAGE 30*

JOHNSON & JOHNSON; DEPUY ORTHOPAEDICS, INC., THOMAS P. SCHMALZRIED, M.D. A PROFESSIONAL CORPORATION, AND DOES 1 through 10, inclusive, ("Defendants"), the following:

## SUMMARY OF CASE

1.      This product liability case is about the failure of an untested and unapproved hip implant that was designed, manufactured, and sold by the Defendants and implanted in Plaintiff Craig Liebscher. Mr. Liebscher's story is a tragic example of the pain, anguish, and damages that are caused when a company continues selling a hip implant long after it realizes that the product has a defect and even long after that defect injured hundreds of people

## PARTIES

2.      Plaintiff Craig Liebscher is a citizen of the State of Arizona and resides in Phoenix, Arizona.

3.      Defendant DePuy Orthopaedics, Inc. ("DePuy") is a corporation organized and existing under the laws of Indiana.  At all times relevant to this action, Defendant Depuy Orthopaedics has conducted business in the County of Dallas, State of Texas, with its primary place of business in Warsaw, Indiana.

4.      Defendant Johnson & Johnson Services, Inc. is a corporation organized and existing under the laws of the State of New Jersey. Defendant Johnson & Johnson, Services Inc., is a subsidiary of Defendant Johnson &Johnson, Inc.  At all times relevant to this action, Defendant Johnson & Johnson Services, Inc. has conducted business in the County of Dallas, State of Texas, with its principal place of business located in New Brunswick, New Jersey.

5.      Defendant Johnson & Johnson, Inc. is a corporation organized and existing under the laws of the State of New Jersey.  Defendant Johnson & Johnson, Inc., is the parent company of Defendant Johnson &Johnson Services, Inc. At all times relevant to this action, Defendant Johnson & Johnson, Inc. has conducted business in the County of Dallas, State of Texas, with its principal place of business located in New Brunswick, New Jersey.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

2
COMPLAINT

*EXHIBIT 2 - PAGE 31*

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

6.      On information and belief, Defendant Thomas P. Schmalzried, M.D., A Professional Corporation ("TPS Corp.") is a corporation organized and existing under the laws of California with its primary place of business at 2200 W. Third St., Suite 400, in Los Angeles, California. TPS Corp. designed the hip implant that is the subject of this lawsuit. TPS Corp. collects royalties for each hip implant sold

7.      The true names and capacities of Does 1 through 10 are unknown to Plaintiff. Plaintiff is informed and believe and thereon allege that each of these Defendants are in some way liable for the events referred to in this Complaint and caused damage to Plaintiff.   Plaintiff will amend this Complaint and insert the correct names and capacities of those Defendants when they are discovered.

8.      At all relevant times, each Defendant, including DOES 1 through 10, was the representative, agent, employee, or alter ego of the other Defendant, and in doing the things alleged herein was acting within the scope of its authority as such.

9.      DePuy, Johnson & Johnson Services, Inc., Johnson & Johnson, Inc., TPS Corp., and DOES 1 through 10 are collectively referred to herein as "Defendants."

## BACKGROUND

A.      **Depuy Pinnacle® Acetabular Cup System is Defective, Unsafe and Has Not Been Adequately Tested.**

10.      The hip joint connects the thigh (femur) bone of a patient's leg to the patient's pelvis. The hip joint is often characterized as a ball and socket joint. The acetabulum is the cup shaped socket portion of the hip and the femoral head (ball) at the top of the femur bone rotates within the curved surface of the acetabulum.

11.      A total hip system replaced the body's natural joint with an artificial one, usually made out of metal, plastic or ceramic. A typical hip replacement system consists of four separate components: (1) a femoral stem, (2) a femoral head, (3) a liner (bearing surface), and (4) an acetabular shell. After the surgeon hollows out a patient's femur bone, the metal femoral stem is implanted. The femoral head is usually a metal ball that is fixed on top of the femoral stem. The femoral head forms the hip joint that can rotate when it is placed inside a plastic, ceramic or metal liner that is attached to the interior portion of the metal acetabulum cup (socket) comprised of metal on its outer shell. When

*EXHIBIT 2 - PAGE 32*

1  complete, the femoral stem anchors the metal femoral head that rotates within the liner sitting inside

2  the acetabular cup.

3      12.    Defendants developed, designed, tested, manufactured, distributed, and sold the

4  Pinnacle Acetabular Cup System ("Pinnacle Device") which is a hip bearing system to be used in a

5  total hip replacement or revision surgery. The Pinnacle Device system includes two component parts:

6  the liner and acetabular cup. Defendants developed, designed, tested, manufactured, and distributed at

7  least four different metal acetabular cups and three different liners to be used as the Pinnacle Device.

8  The acetabulum cup is comprised of titanium metal on its outer shell and can be fixed to the bone with

9  screws or without screws by growing into the bone with Defendants Gripton™ porous technology. The

10  Pinnacle Device has three different liners to choose from made of cobalt-chromium metal,

11  polyethylene plastic or ceramic. One of the cobalt-chromium metal liners is the Ultamet® XL.

12      13.    The Pinnacle Device is critically different than most hip replacement devices because a

13  metal acetabular liner may be used instead of a polyethylene plastic acetabular liner. The Pinnacle

14  Devics with a metal liner, such as the Ultamet® XL, is a "metal-on-metal" device due to the fact that

15  both articulating surfaces – the femoral head (ball) and acetabulum liner (socket) – are comprised of

16  cobalt-chromium (CoCr) metal. Therefore, the metal-on-metal design forces metal to rub against metal

17  with the full weight and pressure of the human body creating metallic debris to be released into the

18  Plaintiff's hip socket and blood stream. Because of Defendants' defective design for the Pinnacle

19  Device, hundreds of patients – including Plaintiff – have been forced to undergo surgeries to replace

20  the failed hip implants.

21      14.    Defendants describe the Pinnacle Device as "the only product available that provides the

22  option of choosing a polyethylene or metal insert for use with the same outer titanium cup that replaces

23  the socket of the natural hip."

24      15.    Defendants developed, designed, tested, manufactured, and distributed the metal and

25  ceramic femoral heads that are used with the Pinnacle Device that directly contact the liner. The

26  Articul/eze-M Spec Femoral Head and the aSphere M-Spec Femoral Head are metal femoral heads

27  commonly used with the Pinnacle Device.

28      16.    The Pinnacle Device is fully compatible with DePuy's complete line of advanced

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

4
COMPLAINT

*EXHIBIT 2 - PAGE 33*

femoral stems that Defendants develop, design, test, manufacture, and distribute such as the AML®, Prodigy®, Summit™, Corail®, Tri-Lock®, and S-ROM femoral stems and sleeves.

17. The Pinnacle Device is a Class III medical device. Class III devices are those that operate to sustain human life, are of substantial importance in preventing impairment of human health, or pose potentially unreasonable risks to patients.

18. The Medical Device Amendments to the Food, Drug, and Cosmetics Act of 1938 ("MDA"), in theory, require Class III medical devices, including the Pinnacle Device, to undergo premarket approval by the FDA. Premarket approval is a process which obligates the manufacturer to design and implement a clinical investigation and submit the results of the investigations to the FDA.

19. Premarket approval is a rigorous process that requires a manufacturer to submit what is typically a multivolume application that includes, among other things, full reports of all studies and investigation of the device's safety and effectiveness that have been published or should reasonably be known to the applicant; a full statement of the device's components, ingredients, and properties, and of the principle or principles of operation; a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and, when relevant, packing and installation of such device; samples or device components required by the FDA; and, a specimen of the proposed labeling.

20. The FDA may grant premarket approval only if it finds that there is reasonable assurance that the medical device is safe and effective and must weigh any probable benefit to health from the use of the device against any probable risk of injury or illness from such use.

21. A medical device on the market prior to the effective date of the MDA – a so called "grandfathered" device – was not required to undergo premarket approval.

22. In addition, a medical device marketed after the MDA's effective date may bypass the rigorous premarket approval process if the device is "substantially equivalent" to a pre-MDA device (i.e., a device approved prior to May 28, 1976). This exception to premarket approval is known as the "510(k)" process and simply requires the manufacturer to notify the FDA under section 510(k) of the MDA at least 90 days prior to the device's introduction on the market of the manufacturer's intent to market a device, and to explain the device's substantial equivalence to a pre-MDA predicate device. The FDA may then approve the new device for sale in the United States.

EXHIBIT 2 - PAGE 34

23.    The MDA does not require an FDA determination the device is in fact substantially equivalent to a grandfathered device.

24.    Instead of assuring the safety of the Pinnacle Device through clinical trials, Defendants sought to market the Pinnacle Device without conducting any clinical trials by obtaining FDA approval under section 510(k). To that end, Defendants submitted a section 510(k) premarket notification of intent to market the Pinnacle Device.

25.    By telling the FDA that the Pinnacle Device's design was "substantially equivalent" to other hip components and products on the market, Defendants were able to avoid the safety review required for premarket approval under FDA regulations, which includes clinical trials.

26.    The FDA cleared the Pinnacle Device for sale by means of the abbreviated 510(k) process and consequently the FDA did not require the Pinnacle Device to undergo clinical trials.

27.    The 510(k) notification for the Pinnacle Device includes Defendants assertion that it believes the Pinnacle Device to be substantially equivalent to grandfathered devices – devices that were never required to be reviewed for safety and effectiveness.

28.    Significantly, unlike the premarket approval process, the 510(k) notification process does not call for scrutiny – or even clinical testing – of a device's safety and effectiveness.

29.    A finding of substantial equivalence is not equivalent to a finding of a device's safety and effectiveness.

30.    Thus, the FDA's finding of "substantial equivalence" had nothing to do with reviewing the Pinnacle Device's safety and effectiveness, but rather only a determination of equivalence to grandfathered devices that never underwent safety and effectiveness review.

31.    Defendants sold approximately 150,000 Pinnacle Devices.

**B.    After receiving over 1,300 reported adverse events, Defendants should have recalled or notified the public and health care industry of the defective problems. Instead, Defendants have continued to market the Pinnacle Device.**

32.    Defendants have received over 1,300 reports associated with the Pinnacle Device since 2002, and the number is expected to grow. From January 1, 2011 to March 31, 2011, the FDA received over 250 self-reported adverse events regarding the Pinnacle Device (metal-on-metal).  Reported symptoms range from pain, infection, inflammation, feeling as if hip is dislocating, heavy metal

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

6
COMPLAINT

EXHIBIT 2 - PAGE 35

1  poisoning (metallosis) confirmed by blood tests resulting in eventual revision, ALVAL fluid (Aseptic

2  Lymphocytic Vasculitis Associated Lesion) and necrotic tissue in and around the hip joint, catastrophic

3  failure, premature wear, disarticulation, and disassembly.

4       33.    In May 2002, shortly after Defendants began selling the Pinnacle Device, Defendants

5  received two complaints. One reported that a patient had to undergo revision surgery to remove and

6  replace the Pinnacle Device because the liner disassociated with the cup. The other reported revision

7  surgery because the acetabular cup had loosened. DePuy closed their investigation of the filed

8  complaints finding that "corrective action is not indicated."

9       34.    Defendants have continued to receive hundreds of similar complaints since 2002

10 reporting that the Pinnacle Device had failed and forced patients to undergo painful and risky surgery

11 to remove and replace the failed hip. By June 2006, Defendants had received 50 complaints related to

12 the Pinnacle Device.

13      35.    Consequently, Defendants were fully aware that the Pinnacle Device was defective and

14 that dozens of patients already had been injured by the Pinnacle Device. Based on this information,

15 Defendants should have recalled the Pinnacle Device as early as 2006. At a minimum, Defendants

16 should have stopped selling the defective implant when it became aware that it had catastrophically

17 failed in patients. Over the next two years, patients continued to report failures of the Pinnacle Device.

18 By the end of 2008, Defendants received more than 430 reports, and by the end of 2009, that number

19 skyrocketed to almost 750.

20      36.    Had Defendants conducted clinical trials of the Pinnacle Device before it was first

21 released on the market in the early 2000's, they would have discovered at that time what they

22 ultimately learned in and around 2007 – that the Pinnacle Device results in a high percentage of

23 patients developing pain, metallosis, biologic toxicity, and an early and high failure rate due to the

24 release and accumulation of metal particles in the patient's surrounding tissue when there is friction

25 (wear or edge-loading) of the cobalt-chromium metal femoral head that rotates within the cobalt-

26 chromium metal acetabular liner

27      37.    The metallic particulates released by friction of the metal-on-metal surfaces can become

28 toxic causing metallosis or cobaltism giving rise to pseudotumors or other conditions. The formation of

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

7
COMPLAINT

EXHIBIT 2 - PAGE 36

metallosis, pseudotumors, and infection and inflammation causes severe pain and discomfort, death of surrounding tissue and bone loss, and a lack of mobility.

38. Despite the knowledge of the Pinnacle Device's defect and that it had failed hundreds of times, causing hundreds of patients to undergo the agony of another surgery, Defendants continued to market and sell the defective Pinnacle Device implant. In so doing, DePuy actively concealed the known defect from doctors and patients – including Plaintiff and her doctor – and misrepresented that the Pinnacle Device was a safe and effective medical device.

39. Despite this knowledge, Defendants failed to warn medical providers and/or their customers of the unreasonable dangers associated with the Pinnacle Device and allowed for the continued sale and implantation into patients' bodies.

40. To this day, Defendants continue to sell the defective Pinnacle Device to unsuspecting patients without any warning about the risks or the failures that have been reported over the years.

41. Defendants tout the metal-on-metal Pinnacle Device in brochures saying "the DePuy metal-on-metal (MoM) articulation system is leading the way in advanced technology. Through the years of careful engineering, research and expertise, we've created a total hip replacement solution that offers low wear and high stability."

42. Defendants claim "DePuy Orthopaedics remains the leader in metal-on-metal technology, offering several advantages, including larger diameter bearings that can improve hip range of motion and stability. In fact, one study conducted since the device was approved in 2002 observed that an estimated 99.9 percent of Pinnacle Device components remain in use." One of the Pinnacle Device designers, William P. Barnett, MD, of Valley Orthopaedic Associates/Proliance Surgeons in Renton, WA, has been quoted in Defendants' marketing materials saying "the Pinnacle cup exhibited 99% survivorship at five years and, significantly, differences between patients, surgeons, femoral stems, head size, and articulation types did not affect survival."

43. Defendants advertised that "only Pinnacle Hip Solution feature TrueGlide™ technology, allowing the body to create a thin film of lubrication between surfaces. The result is a smooth, more fluid range of natural motion." Defendants distributed a press release stating "the aSphere head, combined with DePuy's exclusive TrueGlide technology, facilitates a more fluid range of natural

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

1    motion and up to 159 degrees range of motion."

2        44.    Defendants advertised that "the Pinnacle™ Acetabular Cup System is DePuy's premium

3    product for acetabular indications and can address all existing pathologies."

4        45.    Defendants advertised that "for the first time surgeons have the choice between high

5    performance bearings which all work within the Pinnacle™ Acetabular Cup System."

6        46.    Other Pinnacle Device advertisements and brochures included pictures of a man on the

7    beach in a wet suit carrying a surf board and a man playing tennis (which specifically describes him as

8    a bilateral replacement). There are pictures of women stretching outside before a job or yoga, and a

9    woman riding a stationary bike.

10        47.    Defendants marketed the Pinnacle Device as high performance hip replacements and as

11    superior products that would allow patients to return to their more active lifestyles. Defendants also

12    advertised the Pinnacle Device would last longer than other hip replacement products.

13        48.    A number of governmental regulatory agencies have recognized the problems that are

14    caused by metal-on-metal implants such as the Pinnacle Device. For instance, the Medicines and

15    Healthcare Products Regulatory Agency ("MHRA") in Britain investigated Defendants' metal-on-

16    metal total hip replacement system after receiving widespread reports of soft tissue reactions and tumor

17    growth in thousands of patients who had received these implants. MHRA has required physicians to

18    establish a system to closely monitor patients known to have metal-on- metal hips by monitoring the

19    cobalt and chromium ion levels in their blood and to evaluate them for related soft tissue reactions.

20        49.    Similarly, the Alaska Department of Health recently issued a bulletin warning of the

21    toxicity of Defendants' metal-on-metal total hip replacement systems. The State of Alaska, like the

22    MHRA, identified the need for close medical monitoring, surveillance and treatment of all patients who

23    had received these and similar metal-on-metal implants.

24        50.    Defendants have known for years that implantation of their Pinnacle Device and other

25    metal-on-metal total hip replacement systems results in metallosis, biologic toxicity, and an early and

26    high failure rate. Once the body is exposed to and absorbs the toxic metallic ions and particulate debris

27    from the Pinnacle Device, inflammation occurs causing severe pain, necrosis (death) of the surrounding

28    tissue and bone loss. Pseudotumors also develop and grow as a direct and proximate result of the toxic

*EXHIBIT 2 - PAGE 38*

metallic particles and ions released from the metal-on-metal hip components.

51.   There is no non-surgical solution for elevated cobalt levels.

**C.   The Defective Pinnacle Devise and the Defendants' Conduct Caused Injuries and Substantial Damages to Plaintiff**

52.   On August 3, 2007, Mr. Liebscher underwent a surgical procedure to implant the Pinnacle Hip in his left hip.  By this time, Defendants had already received over 500 reports that the Pinnacle Hip had failed and it knew that the product was defective, but Defendants refused to disclose that information to Mr. Liebscher, his physicians, or the public.

53.   After the first few months, Mr. Liebscher began to experience severe pain in his hip, thigh and groin area.  Subsequently, his doctor decided that Mr. Liebscher needed to have his hip implant surgically removed and replaced.

54.   In December 2010, Mr. Liebscher was diagnosed with an elevation of cobalt and chromium.

55.   Had Plaintiff known that the Pinnacle Device caused the symptoms he experienced, Plaintiff would not have elected the Pinnacle Device.

56.   As a direct and proximate result of the failure of the defective Pinnacle Device system, Plaintiff sustained and continues to suffer damages, including, but not limited to, past, present, and future pain and suffering, severe and possibly permanent injuries, emotional distress, disability, disfigurement, economic damages (including medical and hospital expenses), monitoring, rehabilitative and pharmaceutical costs, lost wages, and loss of future earnings capacity.  As a result, Plaintiff has sustained and will continue to sustain damages in an amount to be proven at trial.

57.   On March 8, 2011, Mr. Liebscher underwent a painful, complex and risky surgery (known as a "revision surgery") to remove and replace the Pinnacle Hip that had failed.  Revision surgeries are generally more complex than the original hip replacement surgery, often because there is a reduced amount of bone in which to place the new hip implants.  Revision surgeries also usually take longer than the original hip replacement surgery and the revision surgery has a higher rate of complications.

58.   Mr. Liebscher's recovery has been long and painful.  To this day, Mr. Liebscher continues to suffer from pain in his hip and has undergone painful rehabilitation.  Mr. Liebscher's

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

**10**
**COMPLAINT**

*EXHIBIT 2 - PAGE 39*

1   injuries are likely permanent, and they likely will cause additional complications in the future.

2   59.   All of the injuries and complications suffered by Plaintiff were caused by the defective

3   design, warnings, construction and unreasonably dangerous character of the Pinnacle Device that was

4   implanted in him. Had Defendants not concealed the known defects, the early failure rate, the known

5   complications and the unreasonable risks associated with the use of the Pinnacle Device, Plaintiff

6   would not have consented to the Pinnacle Device being used in his total hip arthroplasty.

7   **CAUSES OF ACTION**

8   **COUNT 1**

9   **STRICT PRODUCT LIABILITY**

10  60.   Plaintiff incorporates by reference all preceding paragraphs and allegations of this

11  Complaint as though fully set forth herein.

12  61.   Defendants are manufacturers, distributors, sellers, and suppliers of the Pinnacle Device.

13  62.   The Pinnacle Device was not accompanied by proper warning and instructions to

14  physicians and the public regarding potential adverse side effects associated with the implantation of

15  the Pinnacle Device and the comparative severity and duration of such adverse side effects.

16  63.   The warnings, instructions, and information provided to the medical community and the

17  public did not accurately reflect the symptoms, scope, or severity of potential side effects, specifically

18  the risk of increased metal ions.

19  64.   Defendants failed to perform adequate testing which would have demonstrated that the

20  Pinnacle Device had potentially serious side effects about which Defendants should have provided full

21  and proper warnings.

22  63.   The Pinnacle Device was defective due to inadequate warnings and/or instruction that

23  failed to convey to physicians and the public accurate information about the scope and severity of

24  potential side effects.

25  64.   Defendants violated the statute that was enacted to protect consumers against unfair,

26  deceptive, fraudulent and unconscionable trade and business practices and false advertising, by

27  knowingly and falsely representing that the Defendants' Pinnacle Device were fit to be used for the

28  purpose for which they were intended, when in fact they were defective and dangerous, and by other

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

11
COMPLAINT

*EXHIBIT 2 - PAGE 40*

1   acts alleged herein. These representations were made in marketing and promotional materials.

2       65.   As a direct and proximate result of his implantation of the Pinnacle Device, Plaintiff

3   suffers and will continue to suffer damages as set forth above. Defendants are subject to strict liability

4   for their failure to warn Plaintiff, and his physicians of the dangers associated with the implantation of

5   the Pinnacle Device.

6       WHEREFORE, the Plaintiff demands judgment against Defendants, and each of them,

7   individually, jointly and severally, and requests compensatory damages in a sum in excess of

8   $75,000.00 and punitive damages where applicable, together with costs and interest, and any further

9   relief as the court deems proper, as well as a trial by jury of all issues to be tried.

10   <div align="center">COUNT II</div>

11   <div align="center">**PRODUCTS LIABILITY-DEFECTIVE DESIGN**</div>

12       66.   Plaintiff incorporates by reference all preceding paragraphs and allegations of this

13   Complaint as though fully set forth therein.

14       67.   Defendants are the researcher, developer, manufacturer, distributor, marketer, promoter,

15   supplier and seller of the Pinnacle Device, which is defective and unreasonably dangerous.

16       68.   The Pinnacle Device is defective in its design or formulation in that it is not reasonably

17   fit, suitable or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated

18   with its design. The Pinnacle Device is defective in design in that it lacks efficacy, poses a greater

19   likelihood of injury and is more dangerous than other available devices indicated for the same

20   conditions and uses. If the design defects were known at the time of manufacture, a reasonable person

21   would have concluded that the utility of the Pinnacle Device did not outweigh its risks.

22       69.   The defective condition of the Pinnacle Device rendered it unreasonably dangerous

23   and/or not reasonably safe, and the Pinnacle Device was in this defective condition at the time it left the

24   hands of the Defendants. The Pinnacle Device was expected to and did reach Plaintiff and his

25   physician without substantial change in the condition in which it was designed, manufactured, labeled,

26   sold, distributed, marketed, promoted, supplied and otherwise released into the stream of commerce.

27       70.   Plaintiff was unaware of the significant hazards and defects in the Pinnacle Device. The

28   Pinnacle Device was unreasonably dangerous and/or not reasonably safe in that it was more dangerous

<div align="left">PANISH SHEA & BOYLE LLP<br>11111 Santa Monica Boulevard, Suite 700<br>Los Angeles, California 90025<br>310.477.1700 phone • 310.477.1699 fax</div>

<div align="center">12<br>COMPLAINT</div>

*EXHIBIT 2 - PAGE 41*

than would be reasonably contemplated by the ordinary patient or physician. During the period that Plaintiff used the Pinnacle Device, it was being utilized in a manner that was intended by Defendants. At the time Plaintiff had the Pinnacle Device implanted, it was represented to be safe and free from latent defects.

71.     Defendants are liable to Plaintiff for designing, manufacturing, and placing into the stream of commerce the Pinnacle Device, which was unreasonably dangerous for its reasonably foreseeable uses because of its design defects.

72.     Defendants knew or should have known of the dangers associated with the use of the Pinnacle Device, as well as the defective nature of the Pinnacle Device, but have continued to design, manufacture, sell, distribute, market, promote and/or supply the Pinnacle Device so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by the Pinnacle Device.

73.     Defendants violated the statute that was enacted to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, by knowingly and falsely representing that the Defendants' Pinnacle Device were fit to be used for the purpose for which they were intended, when in fact they were defective and dangerous, and by other acts alleged herein. These representations were made in marketing and promotional materials.

74.     As a direct result of Defendants' conduct, Plaintiff has suffered and continues to suffer serious and permanent non-economic and economic injuries and Defendants are liable to Plaintiff in an amount to be determined at trial.

WHEREFORE, the Plaintiff demands judgment against Defendants, and each of them, individually, jointly and severally, and requests compensatory damages in a sum in excess of $75,000.00, and punitive damages where applicable, together with costs and interests, and any further relief as the court deems proper, as well as a trial by jury of all issues to be tried.

## COUNT III

## NEGLIGENCE

75.     Plaintiff incorporates by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

*EXHIBIT 2 - PAGE 42*

76. At all material times, Defendants had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control and/or distribution of the Pinnacle Device into the stream of commerce, including a duty to assure that the device would not cause those who had it surgically implanted to suffer adverse harmful effects from it.

77. Defendants failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control and/or distribution of the Pinnacle Device into the interstate commerce in that Defendants knew or should have known that this product created a high risk of unreasonable, dangerous side effects, thereby breaching their duty to consumers, including Plaintiff.

78. Defendants were negligent in the designing, researching, supplying, manufacturing, promoting packaging, distributing, testing, advertising, warning, marketing and sale of the Pinnacle Device.

79. Upon information and belief, Defendants continued to market, manufacture, distribute and/or sell the Pinnacle Device to consumers, including Plaintiff, despite the fact that Defendants knew or should have known that the Pinnacle Device caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, when there were safer alternative methods of hip replacements.

80. Defendants knew or should have known that consumers such as Plaintiff would suffer foreseeable injuries as a result of Defendants' failure to exercise ordinary care as described above.

81. At all material times, Defendants knew of the defective nature of the Pinnacle Device as set forth herein, and continued to design, manufacture, market and sell the product so as to maximize sales and profits at the expense of public health and safety, and as such Defendants' conduct exhibited a wanton and reckless disregard for human life; and further, upon information and belief, Defendants exhibited such an entire want of care as to establish that their actions were a result of fraud, evil motive, actual malice and a conscious and deliberate disregard of foreseeable harm to Plaintiff herein.

WHEREFORE, the Plaintiff demands judgment against Defendants, and each of them, individually, jointly severally, and requests compensatory damages in a sum in excess of $75,000.00

*EXHIBIT 2 - PAGE 43*

1   and punitive damages where applicable, together with costs and interest, and any further relief as the

2   court deems proper, as well as a trial by jury of all issues to be tried.

3                                          COUNT IV

4                          NEGLIGENT MISREPRESENTATION

5      82.   Plaintiff incorporates by reference all preceding paragraphs and allegations of this

6   Complaint as though fully set forth herein.

7      83.   At the time Defendants manufactured, designed, marketed, sold and distributed the

8   Pinnacle Device for use by Plaintiff, Defendants knew or should have known the use for which the

9   Pinnacle Device was intended and the serious risks and dangers associated with such use of the

10  Pinnacle Device.

11     84.   Defendants owed a duty to treating physicians and to the ultimate end-users of the

12  Pinnacle Device, including Plaintiff, to accurately and truthfully represent the risks of the Pinnacle

13  Device. Defendants breached that duty by misrepresenting and/or failing to adequately warn Plaintiff's

14  physicians, the medical community, Plaintiff, and the public about the risks of the Pinnacle Device,

15  which Defendants knew or in the exercise of diligence should have known.

16     85.   As a direct result of Defendants' conduct, Plaintiff has suffered and continues to suffer

17  serious and permanent non-economic and economic injuries and Defendants are liable to Plaintiff in an

18  amount to be determined at trial.

19     WHEREFORE, the Plaintiff demands judgment against Defendants, and each of them,

20  individually, jointly and severally, and requests compensatory damages in a sum in excess of

21  $75,000.00 and punitive damages where applicable, together with costs and interest, and any further

22  relief as the court deems proper, as well as a trial by jury of all issues to be tried.

23                                          COUNT V

24                          BREACH OF EXPRESS WARRANTY

25     86.   Plaintiff incorporates by reference all preceding paragraphs and allegations of this

26  Complaint as though fully set forth herein.

27     87.   Defendants expressly warranted to Plaintiff, by and through Defendants and/or their

28  authorized agents or sales representatives, in publications, package inserts, the internet, and other

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

15
COMPLAINT

EXHIBIT 2 - PAGE 44

1  communications intended for physicians, patients, Plaintiff, and the general public, that the Pinnacle
2  Device was safe, effective, fit and proper for its intended use.

3       88.    The Pinnacle Device does not conform to those express representations because the
4  Pinnacle Device is not safe and has serious, life-threatening side effects.

5       89.    In allowing the implantation of the Pinnacle Device, Plaintiff and her physician relied
6  on the skill, judgment, representations, and express warranties of Defendants. These warranties and
7  representations were false in that the Pinnacle Device was not safe and was unfit for the uses for which
8  it was intended.

9       90.    Defendants breached their warranty of the mechanical soundness of the Pinnacle Device
10 by continuing sales and marketing campaigns highlighting the safety and efficacy of their product,
11 while they knew of the defects and risks of product failure and resulting patient injuries. 90.    As a
12 direct result of Defendants' conduct, Plaintiff has suffered and continues to suffer serious and
13 permanent non-economic and economic injuries and Defendants are liable to Plaintiff in an amount to
14 be determined at trial.

15      WHEREFORE, the Plaintiff demands judgment against Defendants, and each of them,
16 individually, jointly and severally, and requests compensatory damages in a sum in excess of
17 $75,000.00 and punitive damages where applicable, together with costs and interest, and any further
18 relief as the court deems proper, as well as a trial by jury of all issues to be tried.

19                      **COUNT VI**

20               **BREACH OF IMPLIED WARRANTY**

21      91.    Plaintiff incorporates by references all preceding paragraphs and allegations of this
22 Complaint as though fully set forth therein.

23      92.    Defendants impliedly warranted to prospective purchasers and users, including Plaintiff,
24 that the Pinnacle Device was safe, merchantable, and fit for the ordinary purposes for which said
25 product was to be used.

26      93.    Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether the
27 Pinnacle Device was of merchantable quality and safe and fit for its intended use.

28      94.    Upon information and belief, and contrary to such implied warranties, the Pinnacle

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

16
COMPLAINT

*EXHIBIT 2 - PAGE 45*

1   Device was not of merchantable quality or safe and fit for its intended use, because the product was and

2   is unreasonably dangerous and unfit for the ordinary purposes for which it was used, as described

3   above.

4        95.    As a direct and proximate result of the breach of implied warranties by Defendants,

5   Plaintiff suffered and will continue to suffer harm and economic loss as described above.

6        WHEREFORE, the Plaintiff demands judgment against Defendants, and each of them,

7   individually, jointly and severally, and requests compensatory damages in a sum in excess of

8   $75,000.00 and punitive damages where applicable, together with costs and interest, and any further

9   relief as the court deems proper, as well as a trial by jury of all issues to be tried.

10   <div align="center">COUNT VII</div>

11   <div align="center">FRAUD</div>

12        96.    Plaintiff incorporates by references all preceding paragraphs and allegations of this

13   Complaint as though fully set forth therein.

14        97.    Defendants made representations to Plaintiff and his physicians that their Pinnacle

15   Device is a high-quality, safe and effective hip replacement system.

16        98.    Before they marketed the Pinnacle Device that was implanted in Plaintiff, Defendants

17   knew or should have known of the unreasonable dangers and serious health risks that such a metal-on-

18   metal total hip replacement system posed to patients like Plaintiff.

19        99.    As specifically described in detail above, Defendants knew that the Pinnacle Device

20   subjected patients to early failure, painful and harmful physical reactions to toxic metallic particles and

21   ions, death of tissue, bone loss and the need for explants and revision surgery.

22        100.    Defendants' representations to Plaintiff and his physicians that their Pinnacle Device is

23   high-quality, safe and effective were false.

24        101.    Defendants concealed their knowledge of the unreasonable risks and dangers associated

25   with the use of the Pinnacle Device to induce Plaintiff and many thousands of others to purchase the

26   system for surgical implantation in their bodies.

27        102.    Neither Plaintiff nor his physicians knew of the falsity of Defendants' statements

28   regarding the Pinnacle Device.

<div align="left">PANISH SHEA & BOYLE LLP<br>11111 Santa Monica Boulevard, Suite 700<br>Los Angeles, California 90025<br>310.477.1700 phone • 310.477.1699 fax</div>

<div align="center">17<br>COMPLAINT</div>

*EXHIBIT 2 - PAGE 46*

103. Plaintiff and his physicians relied upon and accepted as truthful Defendants' representation regarding the Pinnacle Device.

104. Plaintiff and his physicians had a right to rely on Defendants' representation and in fact did rely upon such representations. Had Plaintiff known of the high risks associated with the Pinnacle Device, he would not have purchased or allowed the Pinnacle Device to have been surgically implanted in him.

105. Any applicable statutes of limitation have been tolled by Defendants' knowing and active concealment and misrepresentations alleged here. Plaintiff and others were kept in ignorance of vital information, without any fault or lack of diligence on their part, had no knowledge of the above facts and could not reasonably have discovered the fraudulent nature of Defendants' conduct.

WHEREFORE, the Plaintiff demands judgment against Defendants, and each of them, individually, jointly and severally, and requests compensatory damages in a sum in excess of $75,000.00 and punitive damages where applicable, together with costs and interest, and any further relief as the court deems proper, as well as a trial by jury of all issues to be tried.

## PRAYER FOR RELIEF AS TO ALL COUNTS

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

106. Judgment in favor of Plaintiff and against all Defendants, for damages in such amounts as may be proven at trial;

107. Compensation for both economic and non-economic losses, including but not limited to medical expenses, loss of earnings, pain and suffering, mental anguish and emotional distress, in such amounts as may be proven at trial;

108. Punitive and/or exemplary damages in such amounts as may be proven at trial;

109. Attorneys' fees, expenses and costs of this action;

110. Pre- and post-judgment interest as provided by law; and

111. Any and all further relief, both legal and equitable, that the Court may deem just and proper.

## JURY DEMAND

18
COMPLAINT

*EXHIBIT 2 - PAGE 47*

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax



1     Plaintiffs hereby demand a trial by jury as to all claims in this action.

2

3   DATED: June 8, 2012                PANISH SHEA & BOYLE LLP

4

5                              By:

6                                 Peter Kaufman

7                                 Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

19
COMPLAINT

EXHIBIT 2 - PAGE 48

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association
Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

*EXHIBIT 2 - PAGE 49*

<table>
<tr><td>NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY:</td><td>STATE BAR NUMBER</td><td>Reserved for Clerk's File Stamp</td></tr>
</table>

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):
         FAX NO. (Optional):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION — EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1.  The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

    a.  Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

    b.  Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

    c.  Exchange of names and contact information of witnesses;

    d.  Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

    e.  Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

    f.  Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

    g.  Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| LACIV 229 (new)<br>LASC Approved 04/11 | **STIPULATION — EARLY ORGANIZATIONAL MEETING** | Page 1 of 2 |
|---|---|---|

*EXHIBIT 2 - PAGE 50*

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.   Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i.   Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lasuperiorcourt.org** under "*Civil*" and then under "*General Information*").

2.   The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
          (INSERT DATE)                 (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3.   The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.   References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____          ➤          _____
       (TYPE OR PRINT NAME)                        (ATTORNEY FOR PLAINTIFF)
Date:

_____          ➤          _____
       (TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤          _____
       (TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤          _____
       (TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤          (ATTORNEY FOR _____)
       (TYPE OR PRINT NAME)
Date:

_____          ➤          (ATTORNEY FOR _____)
       (TYPE OR PRINT NAME)
Date:

_____          ➤          (ATTORNEY FOR _____)
       (TYPE OR PRINT NAME)

*EXHIBIT 2 - PAGE 51*

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

**STIPULATION – DISCOVERY RESOLUTION**

*EXHIBIT 2 - PAGE 52*

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

    It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

*EXHIBIT 2 - PAGE 53*

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____ )

Date:

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____ )

Date:

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____ )

*EXHIBIT 2 – PAGE 54*

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:  FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| INFORMAL DISCOVERY CONFERENCE (pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).
3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).
4. For a Request for Informal Discovery Conference, **briefly** describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, **briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

LACIV 094 (new)
LASC Approved 04/11

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

*EXHIBIT 2 - PAGE 55*

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:　　　　　　　FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER -- MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

---

*EXHIBIT 2 - PAGE 56*

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

**The following parties stipulate:**

Date:

_____        ➤        _____
(TYPE OR PRINT NAME)                                      (ATTORNEY FOR PLAINTIFF)

Date:

_____        ➤        _____
(TYPE OR PRINT NAME)                                      (ATTORNEY FOR DEFENDANT)

Date:

_____        ➤        _____
(TYPE OR PRINT NAME)                                      (ATTORNEY FOR DEFENDANT)

Date:

_____        ➤        _____
(TYPE OR PRINT NAME)                                      (ATTORNEY FOR DEFENDANT)

Date:

_____        ➤        _____
(TYPE OR PRINT NAME)                                      (ATTORNEY FOR _____ )

Date:

_____        ➤        _____
(TYPE OR PRINT NAME)                                      (ATTORNEY FOR _____ )

Date:

_____        ➤        _____
(TYPE OR PRINT NAME)                                      (ATTORNEY FOR _____ )

**THE COURT SO ORDERS.**

Date:   _____        _____
                                                            JUDICIAL OFFICER

*EXHIBIT 2 - PAGE 57*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE (NON-CLASS ACTION)**
Case Number _____

**BC486261**

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**
Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 3.3(c)). There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|
| Hon. Carolyn B. Kuhl | 1 | 534 | Hon. Debre Katz Weintraub | 47 | 507 | |
| Hon. Michael P. Linfield | 10 | 631 | Hon. Elizabeth Allen White | 48 | 506 | |
| Hon. Barbara A. Meiers | 12 | 636 | Hon. Deirdre Hill | 49 | 509 | |
| Hon. Terry A. Green | 14 | 300 | Hon. John L. Segal | 50 | 508 | |
| Hon. Richard Fruin | 15 | 307 | Hon. Abraham Khan | 51 | 511 | |
| Hon. Rita Miller | 16 | 306 | Hon. Susan Bryant-Deason | 52 | 510 | |
| Hon. Richard E. Rico | 17 | 309 | Hon. Steven J. Kleifield | 53 | 513 | |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. Ernest M. Hiroshige | 54 | 512 | |
| Hon. Robert L. Hess | 24 | 314 | Hon. Malcolm H. Mackey | 55 | 515 | |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Michael Johnson | 56 | 514 | |
| Hon. James R. Dunn | 26 | 316 | Hon. Ralph W. Dau | 57 | 517 | |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rolf M. Treu | 58 | 516 | |
| Hon. Barbara Scheper | 30 | 400 | Hon. David L. Minning | 61 | 632 | |
| Hon. Alan S. Rosenfield | 31 | 407 | Hon. Michael L. Stern | 62 | 600 | |
| Hon. Mary H. Strobel | 32 | 406 | Hon. Mark Mooney | 68 | 617 | |
| Hon. Charles F. Palmer | 33 | 409 | Hon. Ramona See | 69 | 621 | |
| Hon. Amy D. Hogue | 34 | 408 | Hon. Soussan G. Bruguera | 71 | 729 | |
| Hon. Daniel Buckley | 35 | 411 | Hon. Ruth Ann Kwan | 72 | 731 | |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Teresa Sanchez-Gordon | 74 | 735 | |
| Hon. Joanne O'Donnell | 37 | 413 | Hon. William F. Fahey | 78 | 730 | |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. Emilie H. Elias | 324 | CCW | |
| Hon. Michelle R. Rosenblatt | 40 | 414 | Hon. Elihu M. Berle | 323 | CCW | |
| Hon. Ronald M. Sohigian | 41 | 417 | other | | | |
| Hon. Holly E. Kendig | 42 | 416 | | | | |
| Hon. Mel Red Recana | 45 | 529 | | | | |
| Hon. Fredrick C. Shaller | 46 | 601 | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____   JOHN A. CLARKE, Executive Officer/Clerk

By _____, Deputy Clerk

LACIV CCH 190 (Rev. 01/12)   **NOTICE OF CASE ASSIGNMENT --**   Page 1 of 2
LASC Approved 05-06
For Optional Use   **UNLIMITED CIVIL CASE**

*EXHIBIT 2 - PAGE 58*

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

For additional ADR information and forms visit the Court ADR web application at www.lasuperiorcourt.org (click on ADR).

The plaintiff/petitioner shall serve a copy of this form on each defendant/respondent along with the complaint (Civil only).

**What is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation, and settlement conference are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

    **Cases for Which Arbitration May Be Appropriate**
    Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

    **Cases for Which Arbitration May Not Be Appropriate**
    If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

    **Cases for Which Mediation May Be Appropriate**
    Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

    **Cases for Which Mediation May Not Be Appropriate**
    Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

    **Cases for Which Neutral Evaluation May Be Appropriate**
    Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

    **Cases for Which Neutral Evaluation May Not Be Appropriate**
    Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conference:**
A settlement conference may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

LAADR 005 (Rev. 01-12)             **ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**      Cal. Rules of Court, rule 3.221
LASC Adopted 10-03                                                                Page 1 of 2
For Mandatory Use

*EXHIBIT 2 - PAGE 59*

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## DISPUTE RESOLUTION PROGRAM ACT (DRPA) PROVIDERS

JOHN A. CLARKE, EXECUTIVE OFFICER/CLERK                                    ALTERNATIVE DISPUTE RESOLUTION (ADR) DEPARTMENT

California Rules of Court, rule 3.221, requires counties participating in the Dispute Resolution Programs Act (DRPA) to provide information about the availability of local dispute resolution programs funded under DRPA.  For more information regarding these programs, contact the Los Angeles County Department of Community and Senior Services Contracts Administration Office at 213-738-2621.  The following is a list of the local dispute resolution programs funded in Los Angeles County.

Superior Court of California, County of Los Angeles, ADR Office 213-974-5425
www.lasuperiorcourt.org/ADR

---

**STAFF AND VOLUNTEERS OF THE FOLLOWING AGENCIES ARE NOT EMPLOYEES OF THE SUPERIOR COURT:**

---

Asian-Pacific American Dispute Resolution Center 213-250-8190 www.apadrc.org

California Academy of Mediation Professionals 818-377-7250 www.campmediation.org

California Lawyers for the Arts, Arbitration, and Mediation Service 310-998-5590
www.calawyersforthearts.org

Center for Civic Mediation 877-473-7658 213-896-6533 www.centerforcivicmediation.org

Center for Conflict Resolution 818-705-1090 www.ccr4peace.org

Centinela Youth Services, City of Hawthorne 310-970-7702 www.cys.la.org

Inland Valleys Justice Center 877-832-9325 www.ivjc.org

Korean American Coalition 4.29 Dispute Resolution Center 213-365-5999 www.kacla.org

Los Angeles County Department of Consumer Affairs, Dispute Settlement Services 213-974-0825
www.dca.lacounty.gov

Loyola Law School, The Center for Conflict Resolution 213-736-1145 www.lls.edu/ccr

Norwalk Dispute Resolution Program 562-929-5603 www.ci.norwalk.ca.us/socialservices2.asp

Office of the Los Angeles City Attorney, Dispute Resolution Program 213-485-8324
www.atty.lacity.org/mediate

---

**THE PROGRAMS LISTED ABOVE DO NOT OFFER LEGAL ADVICE OR HELP YOU RESPOND TO A SUMMONS; HOWEVER, THEY MAY ASSIST IN RESOLVING YOUR PROBLEM THROUGH MEDIATION.**

---

LAADR 007 (Rev. 01-12)          **DISPUTE RESOLUTION PROGRAM ACT (DRPA) PROVIDERS**          Cal. Rules of Court, rule 3.221
LASC Adopted 07-04                                                                                                          Page 1 of 1
For Mandatory Use

*EXHIBIT 2 - PAGE 60*

| NAME, ADDRESS, TELEPHONE, FAX, and E-MAIL: | STATE BAR NUMBER: | Reserved for Clerk's File Stamp |
|---|---|---|

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:
Click on the button to select the appropriate court address.

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: |
|---|---|

The undersigned parties in the above-titled action stipulate to participate in the Alternative Dispute Resolution (ADR) process checked below:

☐ Mediation                     ☐ Neutral Evaluation

☐ Arbitration (non-binding)      ☐ Settlement Conference

☐ Arbitration (binding)          ☐ Other ADR Process (describe): _____

| Dated | Name of Stipulating Party<br>☐ Plaintiff ☐ Cross-complainant<br>☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|---|
| Dated | Name of Stipulating Party<br>☐ Plaintiff ☐ Cross-complainant<br>☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Dated | Name of Stipulating Party<br>☐ Plaintiff ☐ Cross-complainant<br>☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Dated | Name of Stipulating Party<br>☐ Plaintiff ☐ Cross-complainant<br>☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Dated | Name of Stipulating Party<br>☐ Plaintiff ☐ Cross-complainant<br>☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Dated | Name of Stipulating Party<br>☐ Plaintiff ☐ Cross-complainant<br>☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Dated | Name of Stipulating Party<br>☐ Plaintiff ☐ Cross-complainant<br>☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Dated | Name of Stipulating Party<br>☐ Plaintiff ☐ Cross-complainant<br>☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |

☐ Number of additional pages attached to this document: _____

| LAADR 001 (Rev. 04-12)<br>LASC Approved 10-04<br>For Optional Use | STIPULATION TO PARTICIPATE IN<br>ALTERNATIVE DISPUTE RESOLUTION (ADR) | Cal. Rules of Court, rule 3.221<br>Page 1 of 1 |
|---|---|---|

*EXHIBIT 2 - PAGE 61*

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 355 South Grand Avenue, Fifteenth Floor, Los Angeles, California 90071-1560.

On August 8, 2012, I served true copies of the following document(s) described as **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(B) (DIVERSITY)** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Yukevich Calfo & Cavanaugh's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY CM/ECF** for parties that are CM/ECF participants. Service is being made electronically on those parties on the attached list that are registered users of the Court's Electronic Case Filing System.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 8, 2012, at Los Angeles, California.

_____
Deanna Castellanos

799250.1 / 25-251

# SERVICE LIST
## Craig Liebscher v. DePuy Orthopaedics, Inc. et al.

| | |
|---|---|
| Brian Panish<br>Peter Kaufman<br>Peter Polos<br>PANISH SHEA & BOYLE LLP<br>11111 Santa Monica Boulevard, Suite 700<br>Los Angeles, CA 90025 | Attorneys for Plaintiff<br>CRIAG LIEBSCHER<br><br>T:   (310) 477-1700<br>F:   (310) 477-1699<br><br>panish@psblaw.com<br>kaufman@psblaw.com<br>polos@psblaw.com |
| Tobias Millrood<br>Bharati O. Sharma<br>POGUST BRASLOW & MILLROOD, LLC<br>Eight Tower Bridge, Suite 1520<br>161 Washington Street<br>Conshohocken, PA 19428 | Attorneys for Plaintiff<br>CRIAG LIEBSCHER<br><br>T:   (610) 941-4204<br>F:   (610) 941-4245<br><br>tmillrood@pbmattorneys.com<br>bsharma@pbmattorneys.com |

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

799250.1 / 25-251

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John Kronstadt and the assigned discovery Magistrate Judge is Fernando M. Olguin.

The case number on all documents filed with the Court should read as follows:

## CV12- 6832 JAK (FMOx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>CRAIG LIEBSCHER | DEFENDANTS<br>DEPUY ORTHOPAEDICS, INC.; JOHNSON & JOHNSON SERVICES, INC.,<br>JOHNSON & JOHNSON (erroneously sued as "Johnson & Johnson, Inc."),<br>THOMAS P. SCHMALZRIED, M.D., a Professional Corporation, et al. |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing<br>yourself, provide same.)<br><br>Brian Panish, Peter Kaufman, Peter Polos<br>PANISH SHEA & BOYLE LLP<br>11111 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025; 310-477-1700 | Attorneys (If Known)<br><br>Alexander G. Calfo, Kelley S. Olah<br>YUKEVICH CALFO & CAVANAUGH<br>355 S. Grand Ave, 15th Floor<br>Los Angeles, CA 90071; (213) 362-7777 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES -** For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding ☑ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No      ☐ MONEY DEMANDED IN COMPLAINT: $ In excess of $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Sections 1441 and 1332

**VII. NATURE OF SUIT (Place an X in one box only.)**

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☑ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number: **CV12-6832**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
#### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No   ☑ Yes
If yes, list case number(s): <u>For list of related case, see Attachment "A." All related cases have transferred to Judge Wu.</u>

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                               ☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☑ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Arizona |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Indiana, New Jersey |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Arizona |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _Kelley_   Date _August 8, 2012_

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

**ATTACHMENT "A"**

777542.1 / 00-029

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

CIVIL COVER SHEET

ATTACHMENT "A"

VIII(b) RELATED CASES

1. *Catherine Falvey v. DePuy Orthopaedics, Inc. et al.,* Case No. CV11-02441-GW;
2. *Gary E. Rosenstein v. DePuy Orthopaedics, Inc. et al.,* Case No. CV11-04711-GW;
3. *Thomas J. Hughes v. DePuy Orthopaedics, Inc. et al.,* Case No. CV11-04709-GW;
4. *Bernice Kofka v. DePuy Orthopaedics, Inc. et al.,* Case No. CV11-04678-GW;
5. *Tom M. Storbakken v. DePuy Orthopaedics, Inc. et al.,* Case No. CV11-04677-GW;
6. *Steven G. Maddeaux v. DePuy Orthopaedics, Inc. et al.,* Case No. CV11-04560-GW;
7. *Rose Herbott v. DePuy Orthopaedics, Inc. et al.,* Case No. CV11-04564-GW;
8. *Vanessa Roque v. DePuy Orthopaedics, Inc. et al.,* Case No. CV11-04680-GW;
9. *Elizabeth Zapf v. DePuy Orthopaedics, Inc. et al.,* Case No. CV11-03104-GW;
10. *Carl Cossick v. DePuy Orthopaedics, Inc. et al.,* Case No. CV11-10178-GW;
11. *William Hammel et al. v. DePuy Orthopaedics, Inc. et al.,* Case No. CV11-09982-GW;
12. *Cindy Greenwood v. DePuy Orthopaedics, Inc. et al.,* Case No. CV11-09984-GW;
13. *Kelvin Knudson v. DePuy Orthopaedics, Inc. et al.,* Case No. CV11-09951-GW;
14. *Deborah Stapleton et al. v. DePuy Orthopaedics, Inc. et al.,* Case No. CV11-09943-GW;
15. *Armand Sanchez et al. v. DePuy Orthopaedics, Inc. et al.,* Case No. CV11-07867-GW;
16. *Christy Cain v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-02517-GW;
17. *Sally Swanson v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-02528-GW;
18. *Paul Norris et al. v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-02549-GW;
19. *Anthony E. Faria v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-02603-GW;
20. *Harold Yeoman et al. v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-02571-GW;
21. *William Meyer v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-03195-GW;
22. *Galina Korsunsky v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-03194-GW;
23. *Joyce Marr v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-03151-GW;
24. *Pietro Ballato et al. v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-03005-GW;
25. *Paul L. McCurley et al. v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-2989-GW;
26. *William Waite v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-03022-GW;
27. *Jean Knapp et al. v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-03489-GW;
28. *Gary Winters et al. v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-02990-GW;
29. *Nona Driver et al. v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-04072-GW;
30. *Ilene Bossano et al. v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-04184-GW;
31. *Patricia M. Gentry et al. v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-04446-GW;
32. *Kathie Hoffman et al. v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-04328-GW;
33. *Diana Giosa et al. v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-04577-GW;

34.   *Randi Lockie v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-04876-GW;

35.   *Jared Allen v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-04946-GW;

36.   *Lei-Chala Wilson v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-04975-GW;

37.   *Patricia Leathers v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-05620-GW;

38.   *Norman Carrier et al. v. DePuy Orthopaedics, Inc. et al.*, Case No. CV12-05865-GW;

39.   *Searcy Giles et al. v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-06131-GW; and

40.   *Evetta Tooley v. DePuy Orthopaedics, Inc. et al.,* Case No. CV12-06191-GW.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

    At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 355 South Grand Avenue, Fifteenth Floor, Los Angeles, California 90071-1560.

    On August 8, 2012, I served true copies of the following document(s) described as **CIVIL COVER SHEET** on the interested parties in this action as follows:

<div align="center">

**SEE ATTACHED SERVICE LIST**

</div>

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Yukevich Calfo & Cavanaugh's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY CM/ECF** for parties that are CM/ECF participants. Service is being made electronically on those parties on the attached list that are registered users of the Court's Electronic Case Filing System.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

    Executed on August 8, 2012, at Los Angeles, California.

                            _____

                            Deanna Castellanos

YUKEVICH CALFO & CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

1

## SERVICE LIST
### Craig Liebscher v. DePuy Orthopaedics, Inc. et al.

2

3   Brian Panish                                    Attorneys for Plaintiff
    Peter Kaufman                                   CRIAG LIEBSCHER
    Peter Polos
4   PANISH SHEA & BOYLE LLP
    11111 Santa Monica Boulevard, Suite    T:      (310) 477-1700
5   700                                    F:      (310) 477-1699
    Los Angeles, CA 90025
6                                          panish@psblaw.com
                                           kaufman@psblaw.com
7                                          polos@psblaw.com

8   Tobias Millrood                                 Attorneys for Plaintiff
    Bharati O. Sharma                               CRIAG LIEBSCHER
9   POGUST BRASLOW & MILLROOD,
    LLC
10  Eight Tower Bridge, Suite 1520         T:      (610) 941-4204
    161 Washington Street                  F:      (610) 941-4245
11  Conshohocken, PA 19428
                                           tmillrood@pbmattorneys.com
12                                         bsharma@pbmattorneys.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28